**The PEOPLE of the State of Colorado, Complainant,**

v.

**Frederick Grogan BRAILSFORD, Attorney–Respondent.**

**No. 96SA314.**

Supreme Court of Colorado, En Banc.

Feb. 24, 1997.

Linda Donnelly, Disciplinary Counsel, John S. Gleason, Deputy Disciplinary Counsel, Denver, for Complainant.

Jay P.K. Kenney, Denver, for Attorney–Respondent.

PER CURIAM.

This is a lawyer discipline case. A hearing panel of the supreme court grievance committee approved the findings and recommendation of a hearing board that the respondent be publicly censured and ordered to comply with certain conditions. The deputy disciplinary counsel has excepted to the panel's recommendation on the ground that it is too lenient and that the respondent should be suspended instead. We agree and have concluded that suspension for one year and one day is warranted.

## I

The respondent was admitted to the practice of law in this state in 1987. After considering the testimony of the complainant's and the respondent's witnesses and the exhibits introduced in evidence, the hearing board found that the following had been established by clear and convincing evidence.

The hearing board first noted that the parties stipulated that:

1. On or about December 28, 1993, Karen Rose–Brailsford informed the Larimer County Sheriff's Department that between 1984 and 1989 she had been the victim of several sexual assaults perpetrated upon her by her then husband, the Respondent. Ms. Rose–Brailsford reported to the Sheriff's department that the most recent sexual assault occurred in March 1989.

2. Mr. Brailsford was arrested and charged with sexual assault in the first degree, a Class 3 felony.

3. On July 27, 1994 Respondent pleaded guilty, pursuant to *North Carolina v. Alford,* to an amended count charging third degree sexual assault, a class one misdemeanor. The Larimer County District Attorney's Office and Respondent stipulated to a four year deferred sentence on the amended count with the following conditions:

a. That the Defendant be supervised by the Larimer County Probation Department pursuant to their sexual offender's program and pay any court ordered costs.

b. That even though Defendant was then in counseling with Dr. Leonard Medhoff, he would complete any additional counseling that might be recommended by the Probation Department.

4. Although Respondent entered his plea July 27, 1994, he failed to report his

conviction until on or about December 1, 1994.

The respondent and Karen Rose–Brailsford were married in 1970, and they moved to Colorado in 1984 where the respondent attended law school. Even before moving to Colorado, the parties sometimes slept apart. Rose–Brailsford would move into a spare bedroom where she would stay for several weeks at a time.

On March 16, 1989, she was sleeping on the downstairs sofa and was awakened by the respondent about 2:00 a.m. The respondent got on top of her, pinned her against the sofa, and undressed her. Although Rose–Brailsford protested, said no and hit him with her fists on his back, her objections had no effect. She was much smaller than the respondent who weighed between 225 and 230 pounds, and she had difficulty in breathing during the assault because of her asthma and the weight of the respondent's body. They had nonconsensual sexual intercourse. Rose–Brailsford testified that she was in a lot of pain and that afterwards her chest and leg hurt.

Dissolution of marriage proceedings began in 1992. Rose–Brailsford reported the sexual assault and other acts of domestic violence to the Larimer County Sheriff's Department in December 1993, resulting in the respondent's guilty plea in July 1994 to third degree sexual assault.[1]

The respondent was suspended without pay from his job at the Colorado Attorney General's office in January 1996, and he resigned effective March 31, 1996. The respondent began working for the Attorney General's office in 1988, and he was assigned to serve the Department of Agriculture in its various agencies and departments.

The hearing board determined that the foregoing conduct, which occurred before January 1, 1993, the effective date of the Rules of Professional Conduct, violated DR 1–102(A)(3) (engaging in illegal conduct involving moral turpitude), and DR 1–102(A)(6) (engaging in conduct that adversely reflects on the lawyer's fitness to practice law).

## II

The hearing panel approved the board's recommendation that the respondent be publicly censured; that the censure be subject to the respondent's satisfaction of his obligations under the statement of plea disposition; and that he continue in therapy and provide reports twice a year to the Office of Disciplinary Counsel. The respondent has not filed exceptions to these recommendations. The deputy disciplinary counsel maintains, however, that a period of suspension is more appropriate given the seriousness of the misconduct.

The complainant asserts that based on the uncontroverted facts, the respondent's conduct constituted first degree sexual assault, a class 3 felony. *See* § 18–3–402(1), (2), 8B C.R.S. (1986). As relevant to this case, sexual assault in the first degree is defined as follows:

(1) Any actor who knowingly inflicts sexual intrusion or sexual penetration on a victim commits a sexual assault in the first degree if:

(a) The actor causes submission of the victim through the actual application of physical force or physical violence. . . .

. . . .

(2) Sexual assault in the first degree is a class 3 felony, except as provided in subsection (3) of this section.

§ 18–3–402, 8B C.R.S. (1986). By contrast, third degree sexual assault requires sexual contact rather than sexual penetration and

---

1. As pertinent to this case, the elements of sexual assault in the third degree are:

(1) Any actor who knowingly subjects a victim to any sexual contact commits sexual assault in the third degree if:

(a) The actor knows that the victim does not consent;

. . . .

(2) Sexual assault in the third degree is a class 1 misdemeanor, but it is a class 4 felony

if the actor compels the victim to submit by use of such force, intimidation, or threat as specified in section 18–3–402(1)(a), (1)(b), or (1)(c). § 18–3–404, 8B C.R.S. (1986). The marital defense or exception to sexual assault offenses was abolished effective July 1, 1988, before the sexual assault in this case occurred. *See* § 18–3–409, 8B C.R.S. (1996 Supp.).

does not require the actual application of physical force. *See* § 18–3–404(1), 8B C.R.S. (1986).

■ We agree with the complainant that given the stipulation and the testimony of the respondent and his ex-wife in this case, the hearing board should have found that the respondent's conduct constituted a first degree sexual assault, which was the offense with which the respondent was originally charged. The fact that there was sexual penetration, not just contact, was undisputed. Moreover, Rose–Brailsford's testimony established that the use of physical force caused her to submit, and the respondent did not contest that issue. However, we need not decide whether the board's failure to find that a first degree sexual assault occurred was clear error, since, as the respondent points out, the actual nature of his conduct is more important for disciplinary purposes than the statutory label put on it. The highly serious nature of his conduct was not in dispute.

Under the ABA *Standards for Imposing Lawyer Sanctions* (1991 & Supp.1992) (ABA *Standards* ), in the absence of aggravating or mitigating factors, suspension is an appropriate sanction when "a lawyer knowingly engages in criminal conduct which does not contain the elements listed in Standard 5.11 and that seriously adversely reflects on the lawyer's fitness to practice." ABA *Standards* 5.12.

The hearing board found no aggravating factors. Although the board "acknowledges and finds a pattern of domestic violence in the marriage of Respondent and Ms. Rose–Brailsford, ... no pattern of misconduct has been alleged in the Complaint and thus none is found." While this might justify the board in refusing to make additional findings of uncharged disciplinary violations, *see People v. Emeson,* 638 P.2d 293, 294 (Colo.1981) (noting that *In re Ruffalo,* 390 U.S. 544, 88 S.Ct. 1222, 20 L.Ed.2d 117 (1968), "clearly states that the consideration of charges not made in the formal complaint constitutes a violation of the respondent's rights to procedural due process of law."), it does not foreclose a finding of a pattern of misconduct for purposes of determining the proper discipline. *See* ABA *Standards* 9.22(c). Rose–Brailsford testified that she was battered by the respondent throughout their marriage and that she had been repeatedly "slugged" by him. Moreover, the board should have found that Rose–Brailsford was a vulnerable victim. *See id.* at 9.22(h). She was vulnerable to attack by the respondent because they were married. The respondent used the privacy associated with the marital relationship to assault the victim at a time (late at night) and in a place (the family home) when it was unlikely that he would be interrupted by anyone coming to the aid of the victim. Further, the victim was especially vulnerable because of the disparity in size of the parties.

In mitigation, the hearing board noted the following: the absence of a prior disciplinary record, *id.* at 9.32(a); full and free disclosure to the disciplinary authorities and a cooperative attitude toward the proceedings, *id.* at 9.32(e); otherwise good character and reputation as a lawyer, *id.* at 9.32(g); imposition of other penalties and sanctions, consisting of a criminal sentence, the loss of his job at the Attorney General's Office, and being the subject of editorial and other public comment, *id.* at 9.32(k); and the demonstration of remorse, *id.* at 9.32(*l* ). The board also found that "although interim rehabilitation has been deleted from § 9.3 of the Standards ... Respondent has engaged in substantial interim rehabilitation and has a clear understanding of the wrongfulness of his conduct and has a significantly improved sense of his own psychological strengths and weaknesses."

■ Nonetheless, as we said in *People v. Bertagnolli,* 922 P.2d 935, 937 (Colo.1996):

All lawyers must of course obey the law, but we consider it particularly serious when a lawyer engages in criminal conduct that involves the knowing infliction of harm on another person or persons—in this case a client and a former client. *People v. Martin,* 897 P.2d 802, 804 (Colo. 1995) (lawyer suspended for one year and one day following conviction for third degree sexual assault on a client); *People v. Lowery,* 894 P.2d 758, 760 (Colo.1995) (sexual harassment of three law firm employees warrants suspension for one year and one day); *People v. Crossman,* 850 P.2d

708, 710–11 (Colo.1993) (lawyer suspended for one year and one day for solicitation of sexual favors in exchange for legal fees).

We disbarred the lawyer in *Bertagnolli* following his convictions for third degree sexual assault. "Although not classified as a felony, third degree sexual assault is a crime of moral turpitude, and is a grave offense for lawyer discipline purposes. *Martin,* 897 P.2d at 804." *Bertagnolli,* 922 P.2d at 937. Further, "the fact that the respondent at one time enjoyed a good reputation is of no great importance. Crimes of sexual assault commonly occur in secret and remain unknown to the public until the victim complains." *Id.* at 939.

After considering the nature of the misconduct and weighing the mitigating and aggravating factors, we have concluded that a period of suspension is appropriate. Moreover, the misconduct and the surrounding circumstances are of such seriousness that we believe that the respondent should be required to petition for reinstatement. Accordingly, we order that the respondent be suspended for one year and one day.

### III

It is hereby ordered that Frederick Grogan Brailsford be suspended from the practice of law for one year and one day, effective thirty days after this opinion is issued. It is further ordered that the following are conditions of reinstatement, as recommended by the hearing board in its report:

1. That Respondent satisfactorily complete each of his obligations under the Statement of Plea Disposition;

2. That Respondent continue in individual and/or group therapy recommended by Dr. Medhoff and that Dr. Medhoff or his successor provide semi-annual reports to the office of Disciplinary Counsel. Respondent shall provide to the office of Disciplinary Counsel a waiver of confidentiality applicable to all treating and consulting health care professionals until he is released from treatment.

Should the respondent become eligible to seek reinstatement prior to the expiration of the above conditions, he shall demonstrate at such time that he is in compliance with those obligations. The respondent is also ordered to pay the costs of this proceeding in the amount of $1,330.23 within thirty days of the date on this decision to the Supreme Court Grievance Committee, 600 Seventeenth Street, Suite 920–S, Dominion Plaza, Denver, Colorado 80202. Brailsford shall not be reinstated until after he has complied with C.R.C.P. 241.22(b)-(d).