The PEOPLE of the State of
Colorado, Complainant,

v.

John D. MUSICK, Jr., Attorney–
Respondent.

No. 97SA210.

Supreme Court of Colorado,
En Banc.

May 26, 1998.

Linda Donnelly, Disciplinary Counsel, James S. Sudler, Assistant Disciplinary Counsel, Denver, for Complainant.

Frascona, Joiner and Goodman, P.C.; Joseph Adams Cope, Louise Culberson–Smith, Boulder, for Attorney–Respondent.

PER CURIAM.

In this lawyer discipline case, a hearing panel of the supreme court grievance committee sent the findings and recommendation of a hearing board back for further consideration in light of the objections filed by the respondent and the complainant. The hearing panel then approved the board's supplemental findings, but modified the board's recommendation of discipline from a three-month suspension to a suspension of one year and one day. The respondent has excepted to the findings and recommendation. We now accept the hearing panel's recommendation and suspend the respondent for one year and one day.

## I.

The respondent was admitted to practice law in Colorado in 1970. He is also licensed to practice law in California and Hawaii. Following a three-day hearing, the board made the following findings by clear and convincing evidence. The respondent takes issue with most of these findings.

The respondent and Victoria Johnson lived together first in Aspen, Colorado and then in Los Angeles from October of 1988 to October of 1993. In February 1992, the respondent physically assaulted Johnson inside their Los Angeles apartment. The board found that the assault resulted in multiple soft tissue contusions, but no serious injury. The parties reconciled.

On a combination vacation and business trip to Hawaii in May 1993, the respondent again physically assaulted Johnson in their hotel room. Her injuries were minor. At one point during the assault, he threatened to throw Johnson out of the window of their room on the sixteenth floor. He also restrained her with a belt throughout the night so that she could not leave.

Finally, in October 1993, the respondent physically assaulted Johnson in Los Angeles. The assault resulted in no actual injuries, although it caused her pain.

The Code of Professional Responsibility governs the 1992 assault, but the Rules of Professional Conduct apply to the 1993 assaults. In its initial report, the hearing board stated:

> The Board was not presented with any evidence that Respondent's temper which resulted in the physical attacks had affected his law practice or clients in any way. To the contrary, all evidence presented to the Board indicated that throughout the relevant time he had a very successful practice with well-satisfied clients. The Board concluded that the three physical assaults were isolated incidents not involving a fixed pattern of misbehavior. The behavior at issue can find redress in the criminal and civil laws. The Board found that the physical attacks were directly related to the tumultuous and dysfunctional relationship in which the Respondent and Ms. Johnson were involved and were entirely situational. The Board concluded that it was highly unlikely that the temper exhibited by the Respondent which gave rise to the physical attacks on Ms. Johnson would adversely affect his clients. Therefore, the Board concludes that the physical attacks on Ms. Johnson were not a violation of disciplinary Rule 1–102(a)(1) [violating a disciplinary rule] or DR 1–102(A)(6) [engaging in conduct adversely reflecting on the lawyer's fitness to practice] of the Code of Professional Responsibility or Rules 8.4(a) [violating the rules of professional conduct] and 8.4(h) [engaging in conduct adversely reflecting on the lawyer's fitness to practice] of the Rules of Professional Conduct.

The hearing board did find, however, that the respondent's physical assaults violated C.R.C.P. 241.6(3) (violating the highest standards of honesty, justice, and morality) and C.R.C.P. 241.6(5) (violating the criminal laws of a state). Following a remand by the hearing panel for further consideration in light of the objections filed by the parties, the hearing board filed supplemental findings of fact and recommendation.

As part of its findings and conclusions, the board affirmed evidentiary rulings involving the admission of medical records and tape recordings of telephone messages and conversations. The board found the medical record admissible under CRE 803(4). The respondent objected to the admissibility of tape recordings and transcriptions of telephone messages he left for Johnson and tapes of telephone conversations between the respondent and Johnson. These tape recordings were presumably made in California. In his objections to the report of the hearing board, the respondent raised, for the first time, that the tape recordings of his conversations with Johnson were not admissible because of a California statute that prohibited the introduction into evidence of a recording of a confidential communication made without the consent of all the parties to the conversation. *See* Cal.Penal Code § 632 (West 1988 & Supp.1998).

We need not address the question of whether this California statute should be ap-

plied in a lawyer discipline proceeding in Colorado.[1] The hearing board properly found that by failing to contemporaneously object on this basis at the hearing, the respondent waived the objection.[2]

The respondent also alleged that he could not be found to have violated either C.R.C.P. 241.6(3) or C.R.C.P. 241.6(5) since those rules were not specifically pleaded in the complaint. The hearing board agreed and withdrew those findings. However, the hearing board also reconsidered whether the respondent's conduct adversely reflected on his fitness to practice law, in violation of DR 1–102(A)(6) and Colo. RPC 8.4(h):

> The Board concluded that the physical attacks by Respondent on Victoria Johnson were the result of a very critical failure of judgment and evidence a contempt for the law which is at odds with the Respondent's duty to uphold the law. The Board concludes that the conduct reflects adversely on the Respondent's judgment and duty to uphold the law.

In reaching this conclusion, the board quoted from *People v. Senn*, 824 P.2d 822 (Colo. 1992):

> It is preeminently the business of the criminal justice system to punish violations of the laws. While the respondent's misconduct [committing offense of prohibited use of weapon in a domestic altercation] did not directly arise from the practice of law, disciplinary proceedings supplement the work of the criminal courts to maintain respect for the rule of law and protect the public. The respondent's conduct on the morning of September 14 was the result of a very critical failure of judgment and we believe it evinced a contempt for the law

which was at odds with the respondent's duty to uphold the law.

824 P.2d at 824–25 (citations omitted).

The complaint also charged the respondent with misconduct relating to his use of an American Express card issued on an account for which Johnson was ultimately liable. The board found that these charges had not been proved by clear and convincing evidence and dismissed that count.

## II.

The hearing board recommended that the respondent be suspended for three months and that he be ordered to engage in mental health counseling for the personal and emotional problems that led to his physical attacks. The hearing panel approved the board's supplemental findings. However, the panel modified the board's recommendation of a three-month suspension to suspension for one year and one day, "because a shorter suspension would be unduly lenient under the facts of this case." In addition, the panel modified the recommendation of mental health counseling to a requirement that the respondent complete a certified domestic violence treatment program as a condition of reinstatement. *See* § 18–6–802, 6 C.R.S. (1997). The respondent filed exceptions to the panel's action.

The respondent's first contention is that "isolated instances of minor assault" outside of the context of a law practice can never be considered conduct that adversely reflects on the fitness to practice law, especially when the respondent was not charged with violating any criminal laws. In particular, the complaint filed against the respondent did not charge such a violation. The respondent is correct that in other lawyer

---

1. We do note that other courts have declined to apply California's statutes to determine admissibility of similar tape recorded evidence. *See United States v. Little*, 753 F.2d 1420, 1434–35 (9th Cir.1984) (holding that tape recordings made in conformity with federal law but in violation of Cal.Penal Code § 632 were admissible in federal prosecution); *Roberts v. Americable Int'l, Inc.*, 883 F.Supp. 499, 503–04 (E.D.Cal.1995) (federal statute permitting a party to a conversation to intercept the conversation, not California statute prohibiting intentional recording of confidential communications without consent of all

parties, applied to admissibility of employee's interception of conversations in employment discrimination action in federal court). The respondent has not asserted that the tapes were made in violation of Colorado law.

2. The respondent has provided no reasonable explanation for his failure to object at the hearing on this California state law ground, especially since he indicates that he is licensed to practice law in California.

discipline cases involving assault, violation of a criminal law was also charged. *See, e.g., Senn,* 824 P.2d at 823.

However, we have never held that a complaint must charge a violation of the criminal law before physically assaultive behavior can be found to reflect adversely on a lawyer's fitness to practice law. As we said in *People v. Crossman,* 850 P.2d 708 710–11 (Colo. 1993), "[w]e agree with the Supreme Court of Florida that '[i]mproprieties that directly and intentionally harm others *always* are serious offenses in the eyes of this Court.' *Florida Bar v. Samaha,* 557 So.2d 1349, 1350 (Fla. 1990) (emphasis in original)." In *People v. Brailsford,* 933 P.2d 592, 595 (Colo.1997), we observed that "the actual nature of [the attorney's] conduct [which resulted in a guilty plea to third-degree sexual assault] is more important for disciplinary purposes than the statutory label put on it." We suspended Brailsford for one year and one day following his conviction for the third-degree sexual assault of his wife. *See id.* at 596.

In a similar way, we deem the actual nature of the respondent's violent assaultive behavior in this case on multiple occasions more significant than the presence or absence of a criminal charge. Assault on another person is *malum in se. See People v. Washburn,* 197 Colo. 419, 424 n. 3, 593 P.2d 962, 965 n. 3 (1979) ("It is the nature of this offense which gives rise to this issue; the bulk of criminally proscribed behavior is not reasonably subject to the defense of: 'my conduct was not wrong.' Homicide, assault, kidnapping, sexual assault, arson, burglary, and robbery are all *malum per se,* and protestations by the accused that such conduct is blameless is irrational."); *cf. In re Ruffalo,* 390 U.S. 544, 555, 88 S.Ct. 1222, 20 L.Ed.2d 117 (1968) (White, J., concurring) ("Even when a disbarment standard is as unspecific as the one before us, members of a bar can be assumed to know that certain kinds of conduct, generally condemned by responsible men, will be grounds for disbarment. This class of conduct certainly includes the criminal offenses traditionally known as *malum in se.* It also includes conduct which all responsible attorneys would recognize as improper for a member of the profession."). Such

conduct on the part of an officer of the court is very serious indeed. The fact that the respondent's misconduct was not directly related to his practice of law is only one factor to be taken into account, but is not a determinative factor.

The respondent also contends that the recommended discipline is excessive and that his conduct warrants no more than a private censure. In *People v. Knight,* 883 P.2d 1055, 1056 (Colo.1994), we suspended Knight for 180 days with the additional requirement that he petition for reinstatement and demonstrate that he had not participated in any further acts of domestic violence. Knight was convicted of the third-degree assault of his wife over a three-day period. *Id.* Knight pleaded guilty to third-degree assault and the court imposed a deferred judgment and sentence conditioned upon his completion of a thirty-six week domestic violence counseling program and a twenty-four month period with no criminal offenses. Knight self-reported his conviction, and the hearing board found that at the time of the hearing he had completed the domestic violence counseling program and had not engaged in any other acts of domestic violence. *Id.* Of particular importance to the present case, we noted that Knight had taken steps toward rehabilitation but, as we said in *People v. Wallace,* 837 P.2d 1223[, 1224] (Colo.1992):

> We do not minimize the importance of the steps toward rehabilitation that the respondent has already taken, nor are we unmindful of the consequences flowing from a suspension as opposed to private discipline. Our primary duty in attorney discipline cases, however, is to protect the public from unfit practitioners, and the respondent's multiple acts of violence are indicative of a "dangerous volatility which might well prejudice his ability to effectively represent his clients' interests given the pressures associated with the practice of law." *In re Nevill,* 39 Cal.3d 729, 217 Cal.Rptr. 841, 845, 704 P.2d 1332, 1336 (1985).

883 P.2d at 1056. The most striking difference between *Knight* and the present case is not the degree of injury inflicted or threatened, but the complete absence of evidence

that the respondent has taken any steps whatsoever to rehabilitate himself or even to recognize that he has a problem. *See* ABA *Standards for Imposing Lawyer Sanctions* 9.22(g) (1991 & Supp.1992) (ABA *Standards* ) (refusing to acknowledge the wrongful nature of conduct is an aggravating factor for purposes of determining the proper level of discipline). The hearing board found that the physical assaults actually occurred, by clear and convincing evidence. We decline to regard the respondent's failure to take any steps toward rehabilitation as a legitimate exercise of a defense to the charges of misconduct.

The three separate physical assaults constitute a pattern of misconduct, which is also an aggravating factor. *See id.* at 9.22(c). In addition, at the time of the hearing in this case in June 1996, the respondent had not been previously disciplined. On August 22, 1996, a hearing panel of the supreme court grievance committee sent the respondent a letter of admonition for violating Colo. RPC 1.9(a) in his representation of a client whose interests were materially adverse to a former client. This court affirmed that determination in *Musick v. People*, No. 96SA462 (Colo. Apr. 1, 1997) (unpublished order). *See* ABA *Standards* 9.22(a) (prior discipline is an aggravating factor).

In mitigation, the respondent cooperated in the disciplinary proceedings, *see id.* at 9.32(e); he was experiencing personal or emotional problems at the time of the misconduct, *see id.* at 9.32(c); and he has an otherwise good character or reputation in the legal community, *see id.* at 9.32(h). However, the fact that the respondent has a good reputation is of less importance in a case such as this. Acts of domestic violence, like sexual assaults, "commonly occur in secret and remain unknown to the public until the victim complains." *People v. Bertagnolli,* 922 P.2d 935, 939 (Colo.1996).

Taking the seriousness of the offenses together with the aggravating and mitigating factors, we conclude that a long, rather than short, period of suspension is necessary. In addition, as in *People v. Wotan,* 944 P.2d 1257, 1264 (Colo.1997), we believe that the respondent must be required to demonstrate

that he has been rehabilitated and is once again fit to practice law before he may be reinstated. The respondent must therefore undergo reinstatement proceedings. In addition, because he has shown no inclination to undergo appropriate therapy voluntarily, we agree with the hearing panel that the respondent should complete a certified domestic violence treatment program as a condition of reinstatement. Accordingly, we accept the hearing panel's recommendations. At least one member of the court would have accepted the hearing board's recommendation of a three-month suspension.

### III.

John D. Musick, Jr., is hereby suspended from the practice of law for one year and one day, effective thirty days after the date of this opinion. Musick shall not be reinstated until he has petitioned for reinstatement pursuant to C.R.C.P. 241.22(b)-(d). In addition, as a condition for reinstatement, the respondent must demonstrate that he has completed a certified domestic violence treatment program. *See* § 18–6–802, 6 C.R.S. (1997). Finally, Musick is ordered to pay the costs of this proceeding in the amount of $4,108.11 within ninety days after the date on this opinion to the Supreme Court Grievance Committee, 600 Seventeenth Street, Suite 920–S, Dominion Plaza, Denver, Colorado 80202.

HOBBS, J., does not participate.