The PEOPLE of the State of Colorado, Complainant,

v.

David Alan SCOTT, Respondent.

Nos. 05PDJ011, 05PDJ032.

Office of the Presiding Disciplinary Judge of the Supreme Court of Colorado.

Sept. 7, 2005.

Attorney Regulation. On July 11–13, 2005, a Hearing Board held a hearing pursuant to C.R.C.P. 251.18, and suspended Respondent David Alan Scott (Attorney Registration No. 26909) from the practice of law for one year and one day, effective October 8, 2005. The Hearing Board also ordered Respondent to complete a certified domestic violence treatment program and pay the costs incurred in conjunction with these proceedings. Respondent engaged in criminal conduct that seriously adversely reflected on his fitness to practice law when he knowingly assaulted, false imprisoned, and harassed his ex-wife. Respondent also knowingly violated the provisions of a court-ordered Parenting Plan. His misconduct constituted grounds for the imposition of discipline pursuant to C.R.C.P. 251.5, and constituted violations of Colo. RPC 8.4(b) (committing a criminal act that reflects adversely on his honesty, trustworthiness or fitness as a lawyer in other respects) and Colo. RPC 3.4(c) (knowing failure to comply with a court order). Respondent's misconduct resulted in actual bodily injury to his ex-wife, and actual or potential harm to his children and the public at large. The People provided evidence of a number of aggravating factors and Respondent failed to provide significant evidence of mitigating factors.

On July 11–13, 2005, a Hearing Board comprised of EDWIN S. KAHN and JOHN E. HAYES, both members of the Bar, and WILLIAM R. LUCERO, the Presiding Disciplinary Judge ("PDJ" or "the Court"), conducted a hearing pursuant to C.R.C.P. 251.18. Kim E. Ikeler, Assistant Regulation Counsel, appeared on behalf of the Office of Attorney Regulation Counsel ("the People"). Respondent David Alan Scott appeared pro se. The Hearing Board issues the following Opinion and Order Imposing Sanctions.

## OPINION AND ORDER IMPOSING SANCTIONS

*SANCTION IMPOSED: ATTORNEY SUSPENDED FOR ONE YEAR AND ONE DAY*

### I. *ISSUE*

Suspension is generally appropriate when a lawyer knowingly engages in criminal con-

duct that seriously adversely reflects on his fitness to practice law or when a lawyer knowingly violates a court order and causes injury to another. If a lawyer knowingly assaults, falsely imprisons, and harasses his wife, and knowingly violates the provisions of a court ordered Parenting Plan, is suspension for one year and one day the appropriate sanction?

## II. *PROCEDURAL HISTORY AND BACKGROUND*

On January 27, 2005, the People filed a complaint in case number 05PDJ011 ("First Complaint"). Respondent filed an Answer to the First Complaint on February 18, 2005. On March 29, 2005, the People filed a complaint in case number 05PDJ032 ("Second Complaint"). Respondent filed an Answer to the Second Complaint on April 27, 2005. The Court consolidated both cases for a hearing on July 11, 2005.

The Hearing Board first heard evidence regarding the substantive allegations set forth in the complaints. After finding Respondent violated a number of the substantive allegations by clear and convincing evidence, the Hearing Board heard evidence regarding both aggravating and mitigating factors, as well as arguments on the appropriate sanction for the rule violations. The People recommended suspension for one year and one day.

## III. *FINDINGS OF FACT*

The Hearing Board considered the testimony of each witness and exhibit admitted into evidence, and now makes the following findings of fact by clear and convincing evidence.

Respondent took and subscribed the Oath of Admission and gained admission to the Bar of the Colorado Supreme Court on May 23, 1996. He is registered upon the official records of the Colorado Supreme Court, attorney registration number 26909. Respondent is therefore subject to the jurisdiction of this Court in these disciplinary proceedings pursuant to C.R.C.P. 251.1(b).

Respondent married Elizabeth Scott in early 1991. They divorced in November 2004 following a tumultuous 11-month period beginning in July 2003. Before their divorce, Respondent stayed at home with the children and maintained a limited law practice, while Mrs. Scott taught elementary school. Both Respondent and Mrs. Scott testified they enjoyed a relatively happy marriage until Respondent brought cocaine into the home in July 2003. Mrs. Scott testified Respondent used cocaine at night two to three times a week from July until December 2003, and once in May 2004.

By September 2003, Respondent and Mrs. Scott found themselves struggling with a number of issues in an increasingly dysfunctional marriage. These issues caused Respondent to feel insecure about the marriage. He blamed Mrs. Scott for their marital problems. Respondent and Mrs. Scott frequently fought during this time. Mrs. Scott testified Respondent started to physically abuse her in early November 2003.

On December 26, 2003, Respondent hit, bit, kicked, and slapped Mrs. Scott at various times throughout the day in their home. Later that night, after Respondent slapped Mrs. Scott in the face, she took the children and fled to a fellow teacher's home where they stayed for several days. Mrs. Scott called the police the following day. The police officers took pictures of her face (Exhibit 59) and she gave the officers a statement. The Colorado Springs Police Department arrested Respondent and charged him with misdemeanor assault and harassment on December 28, 2003.

Mrs. Scott felt frightened and unsure of what to do after she made the complaint against Respondent. She ultimately decided not to testify against Respondent after he promised to go to church, seek counseling, and stop using cocaine. In April 2004, the trial court dismissed the case based on insufficient evidence after Mrs. Scott failed to appear and testify at trial. In May 2004, she finally went back to Respondent in an attempt to keep her family intact.

Mrs. Scott's efforts to keep her family intact proved unsuccessful. Their relationship continued to deteriorate and Respondent grew increasingly violent over the next

several months. On the night of July 1, 2004, Respondent punched Mrs. Scott and shoved her into a bedpost in their bedroom, resulting in a large contusion on her forehead and a ruptured eardrum. Later that night, Mrs. Scott escaped their home wearing only a shirt, drove out of her subdivision, parked, and spent the night in her car. Respondent took the children out of the home and spent the night in a hotel room. Nevertheless, Mrs. Scott returned home the next day.

Respondent testified he felt concern for Mrs. Scott's condition at the time she suffered these injuries and that he wanted her to go to the hospital. However, Respondent also testified he did not take her to the hospital because he felt equally concerned that he might be charged criminally for the injuries suffered by Mrs. Scott.

Only a few weeks passed before Respondent's next act of violence. On the night of July 19, 2004, Respondent started hitting Mrs. Scott in their bedroom, after they apparently enjoyed a particularly nice day together with the family. Respondent knocked Mrs. Scott into the adjoining bathroom and then proceeded to barricade the bathroom doorway with parts of their bed he had taken apart at an earlier time. After telling Respondent she had called the police, Mrs. Scott escaped the house, hid in the bushes, and eventually drove to an elementary school to use a telephone.

Not long after this incident, Dr. Elizabeth Ann Erickson conducted a physical examination of Mrs. Scott. Dr. Erickson noted multiple injuries to Mrs. Scott, including contusions on both of her arms, a right temporal membrane hole, bruised eyes, a bruised lower back, and a bruised hipbone. Based on Mrs. Scott's narrative and her own observations, Dr. Erickson found Mrs. Scott's injuries consistent with a history of domestic violence.

This incident and these injuries led the police to again arrest Respondent in early August 2004. The police charged him with false imprisonment, harassment, and assault. On September 29, 2004, the trial court dismissed the case based on insufficient evidence, again due to Mrs. Scott's failure to appear and testify at trial. Mrs. Scott testi-

fied they were separated at that point and she hoped they could each move on with their lives. She also did not want to harm his legal career.

On October 2, 2004, after separating from his wife, Respondent met Amanda Simmons through a telephone dating service. After an initial conversation lasting eight hours, they met in-person the next day when Ms. Simmons drove from her residence in Center City to meet Respondent in Colorado Springs. They spent a significant amount of time together over the next few weeks.

Ms. Simmons testified to an event that took place a few weeks into their relationship as follows. On the night of October 21, 2004, she stopped by Respondent's residence after work. They sat on his sectional sofa and talked for a while. At one point, the conversation turned to matters related to Mrs. Scott. Ms. Simmons testified that she initially felt uncomfortable and then frightened when Respondent displayed and manipulated a set of num chucks in an aggressive manner. When she tried to leave, Respondent put his hand on her throat and pushed her back down onto the sectional sofa. Respondent yelled at Ms. Simmons and called her derogatory names. When Respondent finally allowed Ms. Simmons to stand up, she pushed her way past him through the doorway and ran across the yard to her car. Respondent continued to yell at Ms. Simmons as she drove away. Ms. Simmons called the police and filed a report. Based upon a complaint filed by Ms. Simmons, the police arrested and charged Respondent with false imprisonment and harassment on October 22, 2004.

After filing charges against Respondent, Ms. Simmons attempted to work things out with him despite the events of October 21, 2004. Ms. Simmons, struggling financially at the time, admitted to accepting $300.00 from Respondent. Respondent testified Ms. Simmons asked for the money in exchange for not testifying in court, while Ms. Simmons testified she took the money as a loan and not in an effort to extort money as claimed by Respondent. Nonetheless, Ms. Simmons admitted she has not repaid the money as of the date of this hearing.

On December 18, 2004, Respondent left a series of five harassing messages on Mrs. Scott's cellular telephone.[1] The messages related to an ongoing dispute between Respondent and Mrs. Scott regarding how the children would celebrate the Christmas holiday. Respondent also expressed anger toward Mrs. Scott for asking the children whether he ever inappropriately .touched them while they were alone with him. Respondent's numerous messages contained foul language including, "fuck you," "you're an evil fucking bitch," "you're a psycho bitch," and "stupid cunt." The content and delivery of these repetitious messages made them harassing to Mrs. Scott. Respondent even admitted to sounding crazed after listening to the tape.[2]

After receiving the calls, Mrs. Scott called the police and they recorded the messages. The police arrested Respondent later the same day. Instead of cooperating with the police, Respondent verbally abused an officer both in the officer's car and later at the jail. Officer Chacon, who testified during the sanctions phase of the hearing, testified that Respondent called him "ignorant" and continually directed foul language at him.[3] On December 20, 2004, the District Attorney filed a misdemeanor complaint of telephone harassment against Respondent.

Respondent continued his misconduct only days later when he violated the terms of a court ordered Parenting Plan in divorce proceedings. Pursuant to the Parenting Plan, Respondent regularly cared for the children Monday through Friday, and Mrs. Scott picked up the children at 3:00 p.m. on Fridays for the weekend. However, the Parenting Plan contained a provision modifying the parenting time schedule for the holidays. According to the holiday parenting time schedule, Mrs. Scott would pick up the children at 10:00 a.m. on Christmas Eve morning and return them to Respondent at 8:00 p.m. on Christmas Eve night. Respondent would then return the children to Mrs. Scott on Christmas Day at 8:00 p.m.

On December 24, 2004, Respondent waited at the designated drop-off spot to return the children to Mrs. Scott by 10:00 a.m. pursuant to the Parenting Plan. Mrs. Scott failed to appear because she forgot the modified parenting time schedule for the holidays. When Mrs. Scott failed to appear, Respondent panicked and decided to take the children and celebrate Christmas out of town. After celebrating Christmas Eve in a motel room in Denver, Respondent testified he put the children to bed for the night and started to assemble one of the Christmas gifts. Respondent testified he is unsure to this day what happened next.

At one point in the night, Respondent found himself in the bathtub of the motel room bathroom, slipping in and out of consciousness. He described it as a "dreamlike" state of consciousness. Respondent then discovered he had cut his hand and lost a significant amount of blood. Respondent testified he felt he was on the brink of death. However, he adamantly testified that he did not intentionally hurt himself. When Respondent finally pulled himself out of the bathtub the next morning, he found the motel room "looked like a tornado passed through it." He also found the children sitting amongst the mess and quietly playing with their toys. Once Respondent regained minimum physical and mental capacities, he gathered the girls and drove north to Brighton where he rented another motel room. Respondent testified to feeling he physically could not make it back to Colorado Springs at the time. He instead stopped at a store for medical supplies and then took the children to a restaurant in Brighton.

---

1. According to the date/time stamp on Mrs. Scott's voicemail, Respondent left her four of the five messages at 2:11, 4:23, 4:26, and 4:42 p.m.

2. Respondent's described his own voice as sounding like a character from "The Exorcist."

3. The Hearing Board notes that despite the People's references to Respondent's conduct toward Officer Chacon in the Second Complaint, specifically in regard to Respondent's alleged violation of Colo. RPC 8.4(h), the People only presented the testimony of Officer Chacon during the sanctions portion of the hearing. Therefore, the Hearing Board only considered Officer Chacon's testimony regarding Respondent's conduct as an aggravating factor, and not as a part of the substantive allegations.

Before 8:00 p.m. on Christmas Day, the Denver Police Department notified the Colorado Springs Police Department and Mrs. Scott that a motel employee found the motel room Respondent rented the night before damaged and covered with what appeared to be blood. Mrs. Scott met with a homicide detective from Denver who asked her if anyone else (including a small animal) was traveling with Respondent. A motel employee observed that the door handle of the motel room, light switches, walls, bedding, beds, floor, television, tub, toilet, and miscellaneous towels and clothing were covered with blood. Respondent did not return the children on December 25, 2004. On December 26, 2004, the Colorado Springs Police Department issued an Amber Alert.

On December 26, 2004, a patron at a restaurant in Brighton recognized Respondent and the children and called the Brighton Police Department. When the police arrived at the restaurant and contacted Respondent, he ran leaving his children behind. The police arrested Respondent after subduing him with a Taser. The police charged him with child abuse and obstructing police. The police in El Paso County later arrested Respondent and charged him with violation of a child custody order, a class 5 felony, on January 1, 2005.

## IV. CONCLUSIONS OF LAW— SUBSTANTIVE ALLEGATIONS

The People allege in the First Complaint that Respondent violated Colo. RPC 8.4(b) (committing a criminal act that reflects adversely on an attorney's honesty, trustworthiness, or fitness as a lawyer in other respects); C.R.C.P. 251.5(b) (misconduct violating the criminal laws of this state or any other state)[4]; and Colo. RPC 8.4(h) (engaging in any other conduct that adversely reflects on the attorney's fitness to practice law). The People allege Respondent violated these rules of professional conduct by assaulting, harassing and falsely imprisoning Mrs. Scott and Ms. Simmons.

 The People's first claim in the First Complaint alleges violations of Colo. RPC 8.4(b) and C.R.C.P. 251.5(b). The People cite violations of C.R.S. § 18-3-204, C.R.S. § 18-3-303, and C.R.S. § 18-9-111 in support of their allegation. These criminal statutes provide in relevant part:

1. C.R.S. § 18-3-204—"A person commits the crime of assault in the third degree if the person knowingly or recklessly causes bodily injury to another person. . . ."

2. C.R.S. § 18-3-303(1)—"Any person who knowingly confines or detains another without the other's consent and without proper legal authority commits false imprisonment."

3. C.R.S. § 18-9-111(1)(a)[5]—"A person commits harassment if, with intent to harass, annoy, or alarm another person, he . . . strikes, shoves, kicks, or otherwise touches a person or subjects him to physical contact."

The People must show a violation of at least one of these statutes by clear and convincing evidence in order to prove a violation of Colo. RPC 8.4(b). The Hearing Board finds by clear and convincing evidence Respondent violated C.R.S. § 18-3-204 when he knowingly caused bodily injury to Mrs. Scott in their home on December 26, 2003 and July 19, 2004. The Hearing Board also finds by clear and convincing evidence Respondent violated C.R.S. § 18-9-111(1)(a) when he intentionally harassed Mrs. Scott by subjecting her to physical contact in their home on December 26, 2003, and July 19, 2004. The Hearing Board further finds by clear and convincing evidence Respondent violated § 18-3-303(1) when he knowingly confined Mrs. Scott in the bathroom without her consent and without proper legal authority on

---

4. The Hearing Board notes conviction is not a prerequisite to the institution of disciplinary proceedings and acquittal does not necessarily bar disciplinary action.

5. The Hearing Board notes the People allege harassment under C.R.S. § 18-9-111 in their

Complaint, but fail to cite a specific provision in the harassment statute. After reviewing the statute, the Hearing Board finds C.R.S. § 18-9-111(1)(a) most applicable to the facts established by clear and convincing evidence.

July 19, 2004. Therefore, the People established Respondent's conduct violated Colo. RPC 8.4(b) constituting grounds for discipline pursuant to C.R.C.P. 251.5(b) by clear and convincing evidence.

■ However, the Hearing Board could not find clear and convincing evidence regarding the complaints involving Ms. Simmons. Her credibility is brought into question by the following facts. First, she admittedly took money from Respondent after the events of October 21, 2004. The Hearing Board cannot conclude whether Respondent tendered the $300.00 to Ms. Simmons as a loan or whether he tendered it to her for a different purpose. The Hearing Board found this particularly troubling in light of Ms. Simmons' admission that she initiated a telephone call to Respondent the night before testifying in these proceedings. Second, the Hearing Board finds the testimony of Ms. Simmons may have been influenced by the fact that the Office of Attorney Regulation Counsel sent documents describing the assaults, harassment, and false imprisonment of Mrs. Scott to Ms. Simmons shortly before she appeared to testify. Accordingly, the Hearing Board concludes the People failed to prove the allegations related to Ms. Simmons by clear and convincing evidence.

The People's second claim in the First Complaint alleges a violation of Colo. RPC 8.4(h). The Hearing Board views Colo. RPC 8.4(h) as a "fallback" allegation. The Hearing Board finds Respondent's same conduct in violation of Colo. RPC 8.4(b) merges with and proves a violation of Colo. RPC 8.4(h) by clear and convincing evidence.

■ The People allege in the Second Complaint that Respondent violated Colo. RPC 3.4(c) (knowingly disobeying an obligation under the rules of a tribunal); 8.4(b) (committing a criminal act that reflects adversely on an attorney's honesty, trustworthiness, or fitness as a lawyer in other respects); C.R.C.P. 251.5(b) (misconduct violating the criminal laws of this state or any other state); and Colo. RPC 8.4(h) (engaging in any other conduct that adversely reflects on the attorney's fitness to practice law). The People allege Respondent violated these rules of

professional conduct when he knowingly violated a court order and when he left Mrs. Scott harassing telephone messages.

The People's first claim in the Second Complaint alleges a violation of Colo. RPC 3.4(c). The Hearing Board finds by clear and convincing evidence that Respondent violated Colo. RPC 3.4(c) when he knowingly violated the terms of the Parenting Plan and failed to return the children to Mrs. Scott by 8:00 p.m. on Christmas night. Respondent knew of the order requiring him to return the children to Mrs. Scott no later than 8:00 p.m. on Christmas Day. With this knowledge, Respondent left town and engaged in conduct that placed both he and the children in danger. Given Respondent's admitted use of cocaine and aberrant behavior in the past, it is difficult to accept Respondent's explanation that he simply could not return the children as provided in the Parenting Plan. Therefore, the People established a violation of Colo. RPC 3.4(c) by clear and convincing evidence.

The People's second claim in the Second Complaint alleges violations of Colo. RPC 8.4(b) and C.R.C.P. 251.5(b). The People cite violations of C.R.S. § 18–9–111 and C.R.S. § 18–3–304(2) in support of their allegation. These criminal statutes provide in relevant part:

1. C.R.S. § 18–9–111(1)(e)—"A person commits harassment if, with intent to harass, annoy, or alarm another person, he ... initiates communication with a person, anonymously or otherwise by telephone ... in a manner intended to harass...."

2. C.R.S. § 18–3–304(2)—"[A]ny parent or other person who violates an order of any district or juvenile court of this state, granting the custody of a child or parental responsibilities with respect to a child under the age of eighteen years to any person, agency, or institution, with the intent to deprive the lawful custodian or person with parental responsibilities of the custody or care of a child under the age of eighteen years, commits a class 5 felony."

The Hearing Board finds by clear and convincing evidence Respondent violated C.R.S. § 18–9–111(1)(e) when he intentionally annoyed Mrs. Scott by telephone in a manner intended to harass on December 18, 2004. The content and frequency of Respondent's messages left no question as to Respondent's intent to harass Mrs. Scott.

■ The Hearing Board cannot find by clear and convincing evidence Respondent intended to deprive Mrs. Scott of her rightful custody of the children on December 25, 2004, as required by C.R.S. § 18–3–304(2). While the Hearing Board finds Respondent knowingly violated the Parenting Plan by putting himself in a position where he felt he could not return the children, the Hearing Board cannot conclude Respondent acted with the more stringent mental state of intent under the facts of this case. However, the People still established a violation of Colo. RPC 8.4(b) when they proved Respondent's violation of C.R.S. § 18–9–111(1)(e) by clear and convincing evidence.

The People's third claim in the Second Complaint alleges a violation of Colo. RPC 8.4(h). The Hearing Board views Colo. RPC 8.4(h) as a "fallback" allegation. The Hearing Board finds Respondent's same conduct in violation of Colo. RPC 8.4(b) merges with and proves a violation of Colo. RPC 8.4(h) by clear and convincing evidence.

The Hearing Board concludes Respondent violated Colo. RPC 8.4(b) and 8.4(h) as set forth in the First Complaint. The Hearing Board also concludes Respondent violated Colo. RPC 3.4(c), 8.4(b), and 8.4(h) as set forth in the Second Complaint.

## V. SANCTIONS

■ The American Bar Association *Standards for Imposing Lawyer Sanctions* (1991 & Supp.1992) ("ABA *Standards*") and Colorado Supreme Court case law are the guiding authorities for selecting and imposing sanctions for lawyer misconduct. The appropriate sanction depends upon the facts and circumstances of each case.

## Analysis Under the ABA *Standards*

■ Suspension is generally appropriate "when a lawyer engages in criminal conduct which does not contain the elements listed in Standard 5.11 and that seriously adversely reflects on the lawyer's fitness to practice." ABA *Standard* 5.12. Suspension is also generally appropriate when a lawyer knowingly violates a court order and causes injury or potential injury to another. ABA *Standard* 6.22. Therefore, suspension is the presumptive sanction for Respondent's misconduct. However, in imposing a sanction after a finding of lawyer misconduct, ABA *Standard* 3.0 directs the Hearing Board to first consider the following factors:

(1) the duty violated;

(2) the lawyer's mental state;

(3) the actual or potential injury caused by the misconduct; and

(4) the existence of aggravating or mitigating factors.

## A. THE DUTY VIOLATED

Respondent violated duties to the public, the legal system, and the legal profession. "Attorney misconduct perpetuates the public's misperception of the legal profession and breaches the public and professional trust." *In re DeRose*, 55 P.3d 126, 131 (Colo.2002) (paraphrasing *In re Pautler*, 47 P.3d 1175, 1178 (Colo.2002)).

## B. THE LAWYER'S MENTAL STATE

According to the ABA *Standards*, "knowledge is the conscious awareness of the nature or attendant circumstances of the conduct but without the conscious objective or purpose to accomplish a particular result." Here, Respondent acted with a conscious purpose when he assaulted, false imprisoned, and harassed Mrs. Scott. Respondent also acted with a conscious purpose when he violated the terms of a court ordered Parenting Plan.

## C. THE ACTUAL OR POTENTIAL INJURY

Respondent's misconduct resulted in actual bodily injury to Mrs. Scott as evidenced by her testimony and the testimony of Dr.

Erickson. Respondent's misconduct also resulted in actual or potential harm to Respondent's children and the public at large.

## D. AGGRAVATING AND MITIGATING FACTORS

### 1. MATTERS IN AGGRAVATION, ABA *STANDARD* 9.2

The Hearing Board considered evidence of the following aggravating circumstances in deciding what sanction to impose.

#### Pattern of Misconduct/Multiple Offenses—9.22(c) & (d)

The Hearing Board finds Respondent engaged in a pattern of misconduct, specifically a pattern of assaults with regard to Mrs. Scott over a period of several months. Respondent also committed multiple offenses in that he engaged in criminal misconduct when he assaulted, false imprisoned, and harassed Mrs. Scott, and failed to comply with a court ordered Parenting Plan.

#### Submission of False Evidence or Statements—9.22(f)

Respondent testified to only using cocaine a few times during the Summer of 2003. However, a hair-follicle test showed Respondent tested positive for cocaine on August 12, 2004. The Hearing Board gave Respondent an opportunity to clarify, but Respondent failed to retract or clarify his prior statement.

#### Refusal to Acknowledge Wrongful Nature of Conduct—9.22(g)

Respondent steadfastly refused to acknowledge the wrongful nature of his conduct in these proceedings and vehemently denied assaulting Mrs. Scott on any occasion. Instead of addressing his own conduct, Respondent attempted to divert the Hearing Board's attention from his conduct to irrelevant matters related to Mrs. Scott and Ms. Simmons. Respondent also refused to acknowledge any possibility of a drug problem, de-

spite evidence to the contrary as stated above.

### Vulnerability of the Victim—9.22(h)

As a matter of law, a victim is vulnerable when an assault takes place in the home. *People v. Brailsford,* 933 P.2d 592, 595 (Colo.1997). Respondent used "the privacy associated with the marital relationship" to assault Mrs. Scott in a place (the family home) and often at a time (late at night) when it made it unlikely anyone would come to Mrs. Scott's aid.

### 2. MATTERS IN MITIGATION, ABA *STANDARD* 9.3

The Hearing Board considered evidence of the following mitigating circumstances in deciding what sanction to impose.

#### Absence of a Prior Disciplinary Record—9.32(a)

Respondent has no prior disciplinary record in over nine years of practicing law.

### Personal or Emotional Problems—9.32(c)

The evidence suggested that Respondent suffered from emotional distress at times over the past couple of years, however the Hearing Board did not hear testimony from any professional who could offer a useful analysis.

#### Analysis Under Case Law

Colorado Supreme Court case law applying the ABA *Standards* holds suspension is the presumptive sanction when a lawyer knowingly engages in criminal conduct that seriously adversely reflects on his fitness to practice law. The Colorado Supreme Court's decision, *In re Hickox,* 57 P.3d 403 (Colo. 2002), concerned an attorney who pled guilty to disturbing the peace, assault, and domestic violence, which arose from the attorney's grabbing the wrist of his estranged wife while escorting her up the basement staircase. The attorney's conduct violated Colo. RPC 8.4(b), constituting grounds for discipline pursuant to C.R.C.P. 251.5(b). The Colorado Supreme Court found a six-month

suspension to be the appropriate sanction, citing ABA *Standard* 5.12.

> We have traditionally taken a serious view of misconduct by an attorney involving the infliction of bodily harm on another. In numerous recent decisions, we have considered similar conduct and found it sufficiently serious to warrant suspension. In each case, the length of the suspension depended on the seriousness of the assault and the aggravating and mitigating factors present.

*Hickox,* 57 P.3d at 405–06, *citing People v. Musick,* 960 P.2d 89 (Colo.1998); *People v. McGuire,* 935 P.2d 22 (Colo.1997); *People v. Nelson,* 941 P.2d 922 (Colo.1997); *People v. Reaves,* 943 P.2d 460 (Colo.1997); *People v. Shipman,* 943 P.2d 458 (Colo.1997), and *People v. Knight,* 883 P.2d 1055 (Colo.1994).

Given the facts of the present case, under the Colorado Supreme Court's holding in *Hickox* and authority referred to therein, a period of suspension is warranted for Respondent's assault, false imprisonment, and harassment of Mrs. Scott. In *Hickox,* the Colorado Supreme Court suspended the respondent for six months following an isolated assault. In each case, the length of the suspension depends on the seriousness of the assault and the aggravating and mitigating factors present. *Hickox,* 57 P.3d at 406.

The Hearing Board finds the facts of the present case more similar to *People v. Musick,* 960 P.2d 89 (Colo.1998). In *Musick,* the Colorado Supreme Court suspended the respondent for one year and one day after he assaulted his girlfriend on three separate occasions, threatened to throw her out a sixteenth floor window, and restrained her from escaping him. The key difference between *Hickox* and *Musick* is that the Colorado Supreme Court found significant aggravating factors including an absence of evidence that Respondent had taken rehabilitative steps or even recognize he had a problem. The Hearing Board finds similar aggravating factors in this case.

In addition, unlike the attorney in *Hickox,* Respondent in this case also violated a court ordered Parenting Plan. Colorado Supreme Court case law applying the ABA *Standards* also holds suspension is the presumptive sanction when a lawyer knowingly violates a court order and causes injury or potential injury to another. Willful failure to obey a domestic relations order merits suspension. *People v. Hanks,* 967 P.2d 144, 145 (Colo. 1998). "By willfully failing to comply with the court-ordered child support obligations, the respondent violated Colo. RPC 3.4(c) (knowingly disobeying an obligation under the rules of a tribunal) ... and Colo. RPC 8.4(h) (engaging in conduct adversely reflecting on the lawyer's fitness to practice)." *Id.* The Colorado Supreme Court in *Hanks* suspended the respondent for one year and one day. *Id.* at 146.

## VI. *CONCLUSION*

One of the primary goals of our disciplinary system is to protect the public from lawyers who pose a danger to them. The Hearing Board finds Respondent's misconduct raises a substantial question regarding the danger he poses to the public. The Hearing Board also finds Respondent's misconduct adversely reflects on his judgment and ability to maintain respect for the rule of law.

Both the ABA *Standards* and Colorado Supreme Court case law support a period of suspension under the evidence presented in this case. After considering the serious nature of Respondent's misconduct and weighing the mitigating and aggravating factors, the Hearing Board concludes that suspension for a period of one year and one day is the appropriate sanction. A shorter suspension would be unduly lenient under the facts established in this case. Moreover, the misconduct and the surrounding circumstances are so serious that the Hearing Board believes Respondent should be required to petition for reinstatement.

## VII. *ORDER*

It is therefore ORDERED:

1. DAVID ALAN SCOTT, attorney registration number 26909, is SUSPENDED from the practice of law in the State of Colorado for a period of ONE YEAR AND ONE DAY, effective thir-

ty-one (31) days from the date of this Order.

2. DAVID ALAN SCOTT shall complete a certified domestic violence treatment program as a condition of reinstatement.

3. DAVID ALAN SCOTT shall pay the costs of these proceedings. The People shall submit a Statement of Costs within fifteen (15) days from the date of this Order. Respondent shall have ten (10) days thereafter to submit a response.