**The PEOPLE of the State of Colorado, Complainant,**

v.

**Clyde E. HOOK, Respondent.**

**No. 03PDJ076.**

Office of the Presiding Disciplinary Judge of the Supreme Court of Colorado.

April 30, 2004.

Opinion by the Hearing Board, consisting of Presiding Officer JOHN M. LEBSACK and Hearing Board Members, PAUL WILLUMSTAD and ROBERT A. MILLMAN, both members of the Bar. FREDRICK J. KRAUS, Assistant Regulation Counsel, represented the People of the State of Colorado (the "People"). CRAIG L. TRUMAN represented the respondent, CLYDE E. HOOK ("Hook"), who was also present.

## OPINION AND ORDER IMPOSING SANCTIONS

**SANCTION IMPOSED: ATTORNEY SUS-PENDED FOR THREE–YEARS, ALL STAYED PENDING SUCCESSFUL COM-PLETION OF A THREE–YEAR PERIOD OF PROBATION WITH CONDITIONS**

On October 1, 2003, the People filed a Complaint against Hook. On October 21, 2003, Hook filed his Answer. On November 10, 2003, the People filed a motion for judgment on the pleadings. Hook did not contest that motion. On December 13, 2003, the Presiding Officer entered judgment on the pleadings on respondent's violation of Colo. R.P.C. 8.4(b), constituting grounds for discipline as set forth in Claims I, II, and III of the original complaint. A sanctions hearing was held on March 19, 2004.

The People and Hook jointly stipulated into evidence Exhibits 1–11, 12(A)-(C), 13(A)-(B), and 14. The Hearing Board heard testimony from the People's witnesses, Michael H. Gendel, M.D., and John DeJohn. Hook testified on his own behalf. The Hearing Board considered all admissions in the plead-

ings, the Order granting judgment on the pleadings, the exhibits, and the testimony of the witnesses, and made the following findings of fact, which were established by clear and convincing evidence.

## I. FINDINGS OF FACT

1. Clyde Edward Hook has taken and subscribed the oath of admission, was admitted to the bar of the Colorado Supreme Court on October 9, 1979, and is registered upon the official records of the Supreme Court, Attorney registration no. 09773. Hook maintained a law practice in Colorado during all times relevant to the events in question.

2. On the evening of April 7, 2002, Hook arrived at a neighborhood bar, known as the Pub on Pearl, in a highly intoxicated condition. The bar is located in a residential area of Denver. Upon entering the bar, Hook was refused service after the waitress and the bartender determined that he was too intoxicated. After being offered a non-alcoholic beverage, the respondent went to the back poolroom in the bar for a short time. He returned and began harassing customers. The bartender requested that Hook leave the bar. After a brief verbal exchange, he did.

3. Later in the evening, Hook returned to the bar. He was eventually spotted by the bartender and again was asked to leave. A longer verbal exchange occurred, but Hook left the bar for a second time.

4. Sometime later, Hook returned to the Pub on Pearl looking for his coat. The bartender did not want Hook in the bar, and immediately confronted him, requesting that he leave. After a pointed verbal exchange where profanities were used, Hook left the bar.

5. Hook walked home from the bar, went into his basement, retrieved his loaded .357 revolver from a desk, and drove back to the Pub on Pearl. By the time Hook returned, the bar had closed. The bartender and the waitress were in the front area of the bar cleaning. Hook tapped on the window next to the front door of the bar, attempting to gain the attention of the bartender and the waitress, who he could clearly see. Although the bartender and the waitress saw Hook at the front door, they chose to ignore him.

6. Hook then withdrew his .357 revolver and fired a bullet into the front door. Hook could see the occupants moving in the bar and then fired two or three additional shots into the lock in the front door of the bar. Bullet fragments entered the bar and ricocheted around the inside of the bar. The bartender and waitress quickly retreated to the rear of the bar and called police. After trying the front door to see if he could gain entrance, Hook left the scene when the door would not open. Police arrived and photographed the scene. Police could not apprehend Hook at that time, since neither the bartender nor the waitress knew Hook's name or where he lived.

7. The bartender was traumatized by the event and continues to have fears as a result of Hook's misconduct.

8. Hook did not turn himself in and did not inquire as to the injuries he may have caused his victims. After the incident, he went home, put the gun away, told no one, and stayed away from the Pub on Pearl for fear that he would be recognized by patrons or employees.

9. On August 30, 2002, the waitress was in another bar close to the Pub on Pearl. She saw Hook and recognized him as the person who shot into the Pub on Pearl. She called the police. On September 4, 2002, Hook was arrested. He eventually entered a plea of guilty to the misdemeanor crimes of carrying a concealed weapon (C.R.S. § 18–12–105) and reckless endangerment (C.R.S. § 18–3–208) in the County Court for the City and County of Denver, Colorado. As a result of those convictions, he was sentenced to and completed probation.

10. Claims II and III of the People's Complaint allege that Hook's misconduct also meets the elements for the felony crimes of illegal discharge of a firearm (C.R.S. § 18–12–107.5(1)) and

menacing with a deadly weapon (C.R.S. § 18–3–206) (the crime becomes a felony when a deadly weapon is used). This was admitted in Hook's answer and judgment on the pleadings was granted as to these counts.

11. At all times material to this case, Hook suffered from alcoholism. Prior to the incident of April 7, 2002 Hook did not seek treatment for this condition. Hook's alcoholism was principally responsible for the incident of April 7, 2002 and his subsequent failure to take remedial measures. Since the time of his arrest, September 4, 2002, Hook has stopped drinking alcohol. He has undergone the intensive outpatient treatment program for alcohol dependence at Exempla West Pines Hospital. He has maintained monitored, random urinanalysis and other tests to verify his sobriety. After graduation from the intensive outpatient treatment program, Hook continued in the aftercare program at Exempla West Pines, alternating weekly sessions with a program under the Colorado Lawyers Assistance Program. Hook successfully completed the anger management group therapy as required by the terms of his probation in the underlying criminal case. Hook attends five to six Alcoholics Anonymous meetings per week, has a sponsor, and is working on the 12–Step Program. He has also been undergoing weekly individual therapy sessions with Dr. Spencer Friedman, a psychologist for issues including anger management. Hook continues to see his primary care physician and psychiatrist to assure that his medications are appropriate. Additionally, Hook has volunteered work at the Denver Rescue Mission as a kitchen worker since January 2003, and was awarded the Volunteer of the Month by that institution in February 2004. Hook has also done volunteer work for both the Salvation Army and Goodwill Industries as a regular laborer.

12. Dr. Michael H. Gendel performed an independent psychiatric evaluation at the request of the People. He rendered a diagnosis that Hook was alcohol dependent in sustained remission; that he suffered from major depression, moderate severity, in remission; and that he suffered from anxiety disorder NOS with features of generalized anxiety and panic anxiety. He further testified that Hook suffers from problems managing anger. Hook engages in passive-aggressive behavior. The anger problems most clearly manifest themselves when Hook uses alcohol. Dr. Gendel opined that the incident probably would not have occurred were it not for the fact that Hook was intoxicated, but Hook knew the difference between right and wrong at the time of the incident. Dr. Gendel made several recommendations for further treatment and monitoring of Hook's long-standing alcohol dependence problems. The Board finds those recommendations are reasonable and adopts them for the period of monitoring.

## II. CONCLUSIONS OF LAW AND IMPOSITION OF SANCTIONS

The Hearing Board is very concerned with the serious nature of the misconduct, the discharge of a deadly weapon in a public place, and the potential for serious injury or death to two persons. Only by chance was that potential avoided. The board does not mean to diminish the serious nature of the act, but needs to impose an appropriate sanction for Hook in the context of lawyer discipline. The criminal law system has already addressed the criminal behavior. This proceeding is to determine the appropriate sanction for Hook's ability to practice law. The board has determined that the goals of lawyer discipline would best be served by imposing a set of quite stringent conditions of probation, but that no period of served suspension is warranted provided Hook complies with all the conditions of probation. The conditions are crafted to protect the public by assuring, to the greatest extent possible, that Hook will maintain sobriety.

Hook violated Colo. R.P.C. 8.4(b) by committing a criminal act that reflects adversely on the lawyer's honesty, trustwor-

thiness or fitness as a lawyer in other respects, and C.R.C.P. § 251.5 by committing an act which violates the criminal laws of this State or any other state. Hook was convicted of the misdemeanor crimes of carrying a concealed weapon (C.R.S. § 18–12–105) and reckless endangerment (C.R.S. § 18–3–208). *As determined by the order for judgment on the pleadings, his actions constituted the felony crimes of illegal discharge of a firearm* (C.R.S. § 18–12–107.5(1)) and menacing (C.R.S. § 18–3–206) (the crime becomes a felony when a deadly weapon is used). The Board is aware for the purpose of imposing sanctions, that Hook's conduct may be considered felonious although he was not convicted of these crimes. *See People v. Brailsford,* 933 P.2d 592 (Colo.1997). *The Board concludes that it is not determinative, in evaluating the appropriate sanction under these circumstances, whether Hook's misconduct constituted felonies.*

The *American Bar Association Standards for Imposing Lawyer Sanctions ("ABA Standards")* are used as guidance to determine the suitable sanction for Hook's misconduct. *ABA Standard* 1.1 gives this statement of the purpose of sanctions:

> The purpose of lawyer discipline proceedings is to protect the public and the administration of justice from lawyers who have not discharged, will not discharge, or are unlikely properly to discharge their professional duties to clients, the public, the legal system, and the legal profession.

The comment to this standard points out that punishment is not the goal of sanctions in lawyer discipline cases:

> While courts express their views on the purpose of lawyer sanctions somewhat differently, an examination of reported cases reveals surprising accord as to the basic purpose of discipline. As identified by the courts, the primary purpose is to protect the public. Second, the courts cite the need to protect the integrity of the legal system, and to ensure the administration of justice. Another purpose is to deter further unethical conduct and, where appropriate, to rehabilitate the lawyer. A final purpose of imposing sanctions is to educate other lawyers and the public, thereby deterring unethical behavior among all members of the profession. *As the courts have noted, while sanctions imposed on a lawyer obviously have a punitive aspect, nonetheless, it is not the purpose to impose such sanctions for punishment.* [Emphasis added]

*ABA Standard* 3.0 requires an analysis of the lawyer's misconduct, including the duty the lawyer violated, the lawyer's mental state, and the actual or potential injury caused. Hook intentionally engaged in criminal conduct that caused psychic traumatic injury to the bartender and waitress. His misconduct had the potential of causing serious physical injury or death. It is also significant that Hook was an alcoholic and his misconduct occurred while he was intoxicated.

The applicable *ABA Standard* is 5.12. It states: "Suspension is generally appropriate when a lawyer knowingly engages in criminal conduct which does not contain the elements listed in *Standard* 5.11 and that seriously adversely reflects on the lawyer's fitness to practice." This is the presumptive level of discipline, and the Board may increase or decrease this presumed sanction based on the existence of aggravating or mitigating factors.

*ABA Standard* § 9.2 outlines the factors in aggravation. The factors in aggravation that are present include a dishonest or selfish motive, in that after shooting into the bar, Hook made a conscious decision to hide the gun and to avoid the bar so those present at the bar could not identify Hook, *id* at 9.22(b); and substantial experience in the practice of law, *id* at 9.22(i). The Board does not place great weight on the relevance of any of the listed aggravating factors to the circumstances of this case.

*ABA Standards* § 9.3 outline factors in mitigation. In mitigation, there is an absence of a prior disciplinary record, *id* at 9.32(a); full and free disclosure to the disciplinary authorities and a cooperative attitude toward the proceedings, *id at* 9.32(e); imposition of other penalties and sanctions, consisting of a criminal sentence, *id* at 9.32(k); and mental disability or chemical dependency

including alcoholism or drug abuse when: (1) there is medical evidence that the respondent is affected by a chemical dependency or mental disability; (2) the chemical dependency or mental disability caused the misconduct; (3) the respondent's recovery from the chemical dependency or mental disability is demonstrated by a meaningful and sustained period of successful rehabilitation; and (4) the recovery arrested the misconduct and recurrence of that misconduct is unlikely, *id* at 9.32(i)

The Board finds that the last of these mitigating factors, chemical dependency, is the most important factor to be considered in determining the appropriate sanction. In this regard, the Board notes this comment to *ABA Standards* § 9.3:

> Issues of physical and mental disability or chemical dependency offered as mitigating factors in disciplinary proceedings require careful analysis. Direct causation between the disability or chemical dependency and the offense must be established. If the offense is proven to be attributable solely to a disability or chemical dependency, it should be given the greatest weight. If it is principally responsible for the offense, it should be given very great weight; and if it is a substantial contributing cause of the offense, it should be given great weight. In all other cases in which the disability or chemical dependency is considered as mitigating, it should be given little weight. A showing of rehabilitation from chemical dependency may be considered but should not, in and of itself, be a justification for a recommendation for discipline less than that which would have been imposed upon an attorney in similar circumstances where a chemical dependency was not present.

 Because the Board finds that Hook's alcoholism was principally responsible for his misconduct, the Board places very great weight on that mitigating factor. Therefore the Board declines to follow the presumptive discipline of a served suspension (that is, without a stay) and decides to order a stayed suspension of three years pending a three-year probation with conditions designed to assure Hook's continued sobriety.

The Board concludes that provided Hook remains sober, he is not a threat to the public. Protection of the public, as noted, is the primary goal of lawyer discipline. The secondary goals, such as deterring unethical conduct and educating other lawyers, would not be served in this case by an actual served suspension. The paramount objective of the sanction in this case is to protect the public by assuring that Hook's rehabilitation from alcoholism is closely monitored.

The Colorado Supreme Court has stated: "All lawyers must, of course, obey the law, but we consider it particularly serious when a lawyer engages in criminal conduct that involves the knowing infliction of harm on another person or persons...." *People v. Martin,* 897 P.2d 802, 804 (Colo.1995). In *People v. Brailsford,* 933 P.2d 592 (Colo.1997), the respondent was convicted of third degree sexual assault on his wife, which warranted suspension for one year and one day. In *In re Hickox,* 57 P.3d 403, 405 (Colo.2002), the respondent was suspended from the practice of law for six months after having grabbed his estranged wife by her wrist and then twisting her arm behind her back while pushing her up the stairs. The wife stumbled and fell. In the case *In re Van Buskirk,* 981 P.2d 607 (Colo.1999), the respondent received a three-year suspension for burglary and third degree assault. In *People v. McCaffrey,* 925 P.2d 269 (Colo.1996), the respondent was suspended for three years after having fired a shotgun in a residential area. The respondent was also found to have abandoned clients. In *People v. Littlefield,* 893 P.2d 773 (Colo.1995), the respondent pointed a shotgun at his landlord and the landlord's companion and told them to leave. They got in their car and drove away. Upon their leaving, the respondent fired two shotgun rounds, one of which hit the rear of the landlord's vehicle. Mr. Littlefield was disbarred.

It is significant to note, however, that none of these cases involved misconduct attributable principally to chemical dependency.

The disability or chemical dependence was principally responsible for the offenses committed by Hook. This requires the panel to apply very great weight to the mitigating

factor of chemical dependency. Given the mitigating factor presented, the appropriate sanction is a three year suspension, with strict conditions of probation for a period of three years. All of the suspension should be stayed provided Mr. Hook satisfactorily complies with all the conditions of probation.

### III. *ORDER*

1. Clyde Edward Hook is hereby suspended from the practice of law for a period of three years. All three years are stayed pending the successful completion of a three year period of probation, subject to the following conditions:

A. Hook shall not engage in any conduct that results in the imposition of any form of discipline as provided in C.R.C.P. 251.6 or 251.7, an order of immediate suspension as provided in C.R.C.P. 251.8, 251.8.5, or 251.8.6, for three years from the date of this order. Hook shall also comply with all local, state and federal criminal laws for three years from the date of this order.

B. Hook shall comply with all terms and conditions of the sentence imposed in *People v. Clyde Edward Hook*, court case no. 02F03665–12, County Court City and County of Denver.

C. Hook shall abstain from the use of any alcohol or any non-prescribed controlled substance during the three-year period of probation.

D. Hook will submit to full screen random urinalysis testing one time per week for a period of one year after the effective date of this order. One time per month Hook shall submit to a urine test known as ethylglucuronide, the other monthly tests shall be standard tests. Thereafter, during the second and third years of the probation Hook shall submit to random urine tests two times per month, with one of the tests being the ethylglucuronide test. For urinalysis testing, the respondent shall provide a sufficient urine sample so that a portion may be tested immediately and the remaining amount preserved for future testing in the event the first test is positive. It shall be the responsibility of the respondent to inform the laboratory and collection agency that the urine sample must be split and an amount preserved for future testing in the event of a positive test. Respondent shall bear the cost of any test and any retest necessitated by a positive test result. The results of the testing shall be provided directly to Hook and the Office of Attorney Regulation Counsel by the testing facility. Hook shall specifically advise the Office of Attorney Regulation Counsel of the outcome of the monthly test in his monthly report. The Office of the Attorney Regulation Counsel has the authority, if sufficient technological advances occur, to further monitor Hook through electronic means. Any technological advance for further monitoring shall be paid for by Hook.

E. Hook shall continue with the weekly alcohol aftercare program at Exempla West Pines, or such other facility approved by the Division of Alcohol and Drug Abuse, for a period of one year, or longer if any mental health professional or evaluator at the program determines he shall attend such program more frequently or for a longer period. Hook may substitute every other weekly meeting at Exempla West Pines with attendance at the Colorado Lawyer Assistance Program weekly meeting or similar peer support meeting as approved by the Office of Attorney Regulation Counsel.

F. Hook shall continue with his weekly anger management therapy sessions with Dr. Spencer Friedman, or another psychologist approved by the Office of Attorney Regulation Counsel for three years or a shorter period of time if recommended by Dr. Friedman.

G. Hook shall attend an Alcohol Anonymous or other equivalent recovery program, meeting at least two times per week for the three-year probation. If any mental health professional or evaluator requires that Hook attend

such a recovery program more frequently, Hook shall comply with that recommendation.

H. Hook shall file a monthly report with the Office of Attorney Regulation regarding the status of his compliance with the conditions in this order.

I. Hook shall pay the costs of any treatment, testing or reporting.

J. Hook shall attempt with his psychiatrist to change his medications to drugs that do not activate the part of the brain that affects an addictive illness.

K. Hook shall neither use, possess, nor have any contact with any firearm of any type during the period of probation.

2. It is anticipated this probation will end in May 2007. Hook must comply with all requirements of C.R.C.P. 251.7, including the timely filing of an affidavit. Hook acknowledges that he carries the burden to establish that all conditions of probation have been fully and timely met to avoid the remainder of his three year suspension being imposed.

3. Hook's violation of any above condition of probation may result in the full three year suspension being imposed as provided in C.R.C.P. 251.7(e).

4. Pursuant to C.R.C.P. 251.32, Hook shall pay all costs and administrative costs in conjunction with this matter. Complainant shall file a Statement of Costs within fifteen (15) days of the date of this Order; Hook shall have ten (10) days thereafter to file a Response.