# IN THE SUPREME COURT OF IOWA

No. 10–0832

Filed March 25, 2011

**IOWA SUPREME COURT ATTORNEY
DISCIPLINARY BOARD,**

Complainant,

vs.

**JAMES ROBERT KEELE,**

Respondent.

On review of the report of the Grievance Commission of the Supreme Court of Iowa.

Grievance commission reports respondent has committed ethical infractions and recommends a nine-month suspension of respondent's license to practice law. **COMPLAINT DISMISSED.**

Charles L. Harrington and Amanda K. Robinson, Des Moines, for complainant.

J.E. Tobey, III, Davenport, for respondent.

**WIGGINS, Justice.**

The Iowa Supreme Court Attorney Disciplinary Board brought a complaint against the respondent, James R. Keele, alleging violations of the Iowa Rules of Professional Conduct. A division of the Grievance Commission of the Supreme Court of Iowa found the respondent's conduct violated three provisions of the rules and recommended we suspend his license to practice law with no possibility of reinstatement for a period of nine months. On our de novo review, we find the board has failed to establish by a convincing preponderance of the evidence that the respondent has committed a new violation of our ethical rules. Accordingly, we dismiss the board's complaint.

### I. Scope of Review.

We review attorney disciplinary proceedings de novo. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Gailey*, 790 N.W.2d 801, 803 (Iowa 2010). The board has the burden of proving an attorney's ethical misconduct by a convincing preponderance of the evidence. *Id.* A convincing preponderance of the evidence is more than the preponderance standard required in a typical civil case, but less than proof beyond a reasonable doubt. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Templeton*, 784 N.W.2d 761, 764 (Iowa 2010). Although the commission's findings and recommendations are not binding on us, we give them respectful consideration. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Hoglan*, 781 N.W.2d 279, 281 (Iowa 2010) (per curiam). "Upon proof of misconduct, we may impose a greater or lesser sanction than the sanction recommended by the commission." *Templeton*, 784 N.W.2d at 764.

## II. Findings of Fact.

On our de novo review, we find the following facts. James Robert Keele is a sixty-two-year-old attorney who has lived in West Liberty, Muscatine County his entire life. Keele received his undergraduate degree from Cornell College and then attended the University of Iowa, College of Law. In 1972 Keele graduated from law school and received his Iowa license to practice law. Keele joined his father's general practice in West Liberty, where he continues to work as a solo practitioner to this day. In 1971 Keele married and subsequently had two children who are now fully grown.

In 2006 or 2007, a court finalized Keele's dissolution of marriage. After the dissolution, Keele lived alone in his West Liberty home and became lonely and depressed. He began to frequent bars and nightclubs, associate with new people, and use illegal drugs. Keele rented an apartment in Davenport where he partied with other drug addicts, who supplied him with drugs. Eventually, he became addicted to crack cocaine. From January 2007 through July, he was using crack cocaine on a regular basis. During this period, Keele continued to represent clients without complaint. However, he spent less time at the office and quit going to work on a regular basis.

On the evening of July 18, 2007, Keele was up all night partying and using crack cocaine at his Davenport apartment. The next day he had a routine order signed at the courthouse in Muscatine. After appearing in court, he got into his vehicle and headed northbound on Highway 61, back to Davenport. At some point while driving, Keele fell asleep, swerved off the road, and crashed into a steep ditch. Another driver witnessed the crash, pulled over, and called 911. While waiting for

the authorities to arrive, the witness observed Keele get out of his vehicle, pull a black bag out of his car, and throw the bag over a fence.

When officers arrived on the scene, the witness informed them about the black bag. The officers retrieved the bag and inside found drug paraphernalia, including a black pipe, spoons with white residue and burn marks, a plastic bag containing baking soda, and a digital scale that tested positive for the presence of cocaine. The officers took Keele into custody. When he arrived at the jail, his urine tested positive for the presence of cocaine. The State charged Keele with operating while intoxicated (OWI), first offense, and possession of drug paraphernalia in relation to this incident.

Based on the drug paraphernalia found in the black bag, the authorities obtained a search warrant for Keele's West Liberty home. In an empty upstairs bedroom closet, officers found a Chinese SKS 7.62 mm rifle with two detached magazine clips in a cloth gun case. The rifle was not loaded and there was no ammunition found inside the magazine clips or anywhere else in the house. Keele was present while the officers were conducting the search and explained that he was holding onto the rifle for one of his clients. Approximately a year earlier, in the summer of 2006, one of Keele's clients planned to plead guilty to a domestic-abuse charge and asked Keele to hold onto the rifle for him because it would be illegal for him to possess the firearm upon his conviction. Keele agreed and placed the firearm in a vacant upstairs closet where it remained until the officers discovered it.

Following this incident, Keele voluntarily entered into a three-month drug and alcohol treatment program at Rogers Memorial Hospital in Oconomowoc, Wisconsin. He successfully completed the treatment program, returned to West Liberty, and began to rebuild his law practice.

Once home, he sought aftercare treatment by attending almost daily Alcoholics Anonymous (AA) meetings and weekly counseling sessions with a psychiatrist. Keele also entered guilty pleas to the State's charges and received a deferred judgment. On September 25, 2008, we accepted a public reprimand handed down by the board finding Keele's conduct surrounding his convictions for OWI, first offense, and possession of drug paraphernalia violated the Iowa Rules of Professional Conduct. *See* Iowa Ct. R. 35.3 (allowing the supreme court to accept a public reprimand issued by the board as the appropriate sanction for a violation of the Iowa Rules of Professional Conduct).

On November 15, 2007, Keele was indicted in federal court for knowingly possessing a firearm while being an unlawful user of, or addicted to, a controlled substance in violation of 18 U.S.C. §§ 922(g)(3) and 924(a)(2) (2006), a felony. A jury trial was held and the jury returned a verdict finding Keele guilty. The court sentenced Keele on September 30, 2008. He appealed his conviction to the Eighth Circuit Court of Appeals. The circuit court affirmed his conviction on December 21, 2009.[1]

In sentencing Keele, the United States District Court for the Southern District of Iowa determined Keele's conviction represented the most innocuous and basic form of the offense charged. Accordingly, the court departed from the sentencing guidelines and sentenced Keele to a term of probation for three years. As conditions of probation, Keele was

---

[1]On appeal, Keele argued that probable cause did not support the issuance of a search warrant for his West Liberty home. The district court upheld the search under the good-faith exception, even though it found there was not sufficient probable cause for the issuance of the search warrant. The Eighth Circuit Court of Appeals affirmed the district court by finding the magistrate judge who issued the search warrant had a " 'substantial basis for concluding that probable cause existed.' " *United States v. Keele*, 589 F.3d 940, 944 (8th Cir. 2009) (quoting *United States v. Montes-Medina*, 570 F.3d 1052, 1059 (8th Cir. 2009)).

required to serve six months in a residential reentry center, followed by another six months of home confinement with an electronic monitoring device. The court, however, granted Keele work release privileges for the duration of both these conditions. In addition, Keele was required to pay a $4100 fine.

Beginning in late October 2008, Keele lived in a work release center in Davenport for six months. While there, he fully participated in one-on-one counseling sessions, attended almost daily Narcotics Anonymous and AA meetings, and got involved in a program entitled, "Celebrate Recovery" at a local church. After successfully completing his stay at the work release center, in April 2009 Keele returned to his West Liberty home, where he was placed on house arrest with an electronic monitoring device for another six-month period. During his time at the work release center and on house arrest, he continued to practice law out of his West Liberty office during the day. In October Keele's house-arrest monitoring ended. However, he continues to be on supervised release until December 29, 2011.

Throughout his probationary period, Keele has been regularly and randomly drug tested and has never tested positive for drugs or alcohol. Currently, Keele attends AA meetings approximately two times a month. His probation officer believes this is sufficient. Although his counselors have recommended he obtain a sponsor, at present, he does not have a sponsor. Nevertheless, Keele continues to remain sober and engaged in his recovery.

Based solely on his federal felony conviction, the board filed the present complaint against Keele, claiming he violated Iowa Rules of Professional Conduct 32:8.4(a) (violating or attempting to violate the Iowa Rules of Professional Conduct), 32:8.4(b) (committing a criminal act that

reflects adversely on the lawyer's honesty, trustworthiness, or fitness as a lawyer in other respects), and 32:8.4(d) (engaging in conduct that is prejudicial to the administration of justice). The board invoked issue preclusion as to Keele's conviction and stated the record of conviction was conclusive evidence "warranting revocation or suspension of his license to practice law, pursuant to Iowa Code § 602.10122."

The commission concluded Keele violated rules 32:8.4(a), (b), and (d). After considering the aggravating and mitigating circumstances, the commission recommended we suspend Keele's license to practice law with no possibility of reinstatement for nine months. Keele appeals from the commission's recommendation.

### III. Analysis.

Based upon our recent holding in *Templeton*, on appeal, the board has abandoned its other claims and now only seeks to impose sanctions for Keele's violation of rule 32:8.4(b). *See Templeton*, 784 N.W.2d at 768–69. Rule 32:8.4(b) provides, "It is professional misconduct for a lawyer to . . . commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness, or *fitness as a lawyer in other respects.*" Iowa R. Prof'l Conduct 32:8.4(b) (emphasis added).

We derived rule 32:8.4(b) of the Iowa Rules of Professional Conduct from two of our prior disciplinary rules, DR 1–102(A)(3) and (6), contained in the Iowa Code of Professional Responsibility for Lawyers.[2] *See* Iowa Code of Prof'l Responsibility DR 1–102(A)(3) (a lawyer shall not engage in illegal conduct involving moral turpitude), DR 1–102(A)(6) (a lawyer shall not engage in any other conduct that adversely reflects on

---

[2]On July 1, 2005, the Iowa Rules of Professional Conduct replaced the Iowa Code of Professional Responsibility for Lawyers. *See Iowa Supreme Ct. Att'y Disciplinary Bd. v. Barry*, 762 N.W.2d 129, 131 n.1 (Iowa 2009).

the fitness to practice law). Rule 32:8.4(b) is both broader and narrower than these prior disciplinary rules. 2 Geoffrey C. Hazard, Jr., et al., *The Law of Lawyering* § 65.4, at 65-9 (3d ed. 2009 Supp.) [hereinafter *The Law of Lawyering*]. As one commentator has explained:

> [A]lthough DR 1-102(A)(3) was limited to criminal conduct, it included the [notoriously ambiguous] language about moral turpitude. DR 1-102(A)(6), on the other hand, applied to conduct adversely reflecting on a person's fitness to practice law, but applied to *any* conduct, whether or not criminal.

*Id.* Rule 32:8.4(b) improved upon DR 1–102(A)(3) and (6) by combining their key elements while removing the vague language of "moral turpitude." *Id.*

An attorney's fitness to practice law includes his or her moral character, suitability to act as an officer of the court, ability to maintain a professional relationship, competency in legal matters, and whether he or she can be trusted to vigorously represent clients, without overreaching. *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Mulford*, 625 N.W.2d 672, 683 (Iowa 2001); *The Law of Lawyering* § 65.4, at 65-9. Conduct that reflects adversely on an attorney's fitness to practice law includes conduct that reveals character defects, which affects the lawyer's ability to deal with important controversies and confidential information and that " 'lessen[ ] public confidence in the legal profession.' " *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Barry*, 762 N.W.2d 129, 138 (Iowa 2009) (quoting *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Johnston*, 732 N.W.2d 448, 454 (Iowa 2007)); *The Law of Lawyering* § 65.4, at 65-9 to 65-10; *see also Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Steffes*, 588 N.W.2d 121, 124 (Iowa 1999) (recognizing intemperate and undignified conduct reflects adversely on an attorney's fitness to practice law). In determining whether an

attorney's criminal conduct reflects adversely on his or her fitness to practice law, we consider the following factors:

> "the lawyer's mental state; the extent to which the act demonstrates disrespect for the law or law enforcement; the presence or absence of a victim; the extent of actual or potential injury to a victim; and the presence or absence of a pattern of criminal conduct."

*Templeton*, 784 N.W.2d at 767 (quoting *In re Conduct of White*, 815 P.2d 1257, 1265 (Or. 1991)).

Sections 922(g)(3) and 924(a)(2) of title 18 contained in the United States Code make it illegal for a person who is an unlawful user of, or addicted to, any controlled substance to knowingly possess a firearm. To be guilty of this crime, the person must be an unlawful user of, or addicted to, a controlled substance. *See* 18 U.S.C. § 922(g)(3). Keele's federal criminal conviction conclusively established the fact that he was an unlawful user of, or addicted to, a controlled substance. Iowa Ct. R. 35.7(3). We have previously found Keele violated the Iowa Rules of Professional Conduct for his illegal use of crack cocaine, which resulted in his convictions for OWI, first offense, and possession of drug paraphernalia and disciplined him with a public reprimand. We cannot discipline an attorney twice for the same conduct. Therefore, we will not consider his unlawful use of, or addiction to, a controlled substance as a new violation of the Iowa Rules of Professional Conduct.

The only conduct we have not already considered or sanctioned Keele for is his illegal possession of a firearm. Accordingly, we will focus only on whether Keele's illegal possession of a firearm reflects adversely on his fitness to practice law in violation of Iowa Rule of Professional Conduct 32:8.4(b).

Iowa Code section 602.10122 provides that an attorney's conviction of a felony is a "sufficient cause[ ] for revocation or suspension" of the attorney's license to practice law. Iowa Code § 602.10122(1) (2007). However, we have also stated that "[t]he mere commission of a criminal act does not necessarily reflect adversely on the fitness of an attorney to practice law." *Templeton*, 784 N.W.2d at 767. While many crimes, such as forgery and perjury, by their very nature reflect adversely on an attorney's fitness to practice law, other crimes do not. *The Law of Lawyering* § 65.4, at 65-8; *accord State ex rel. Okla. Bar Ass'n v. Armstrong*, 791 P.2d 815, 818 (Okla. 1990) ("A lawyer's conviction of some crimes will, by itself, demonstrate such lawyer's unfitness to practice law. On the other hand, a lawyer's conviction for some kinds of illegal conduct will not facially demonstrate the lawyer's unfitness to practice law."). Therefore, for a criminal act, whether felonious or otherwise, to reflect adversely on an attorney's fitness to practice law, the board must establish a sufficient link between the criminal activity and the attorney's ability to function as a lawyer. *The Law of Lawyering* § 65.4, at 65-8; *accord State ex rel. Okla. Bar Ass'n v. Armstrong*, 848 P.2d 538, 539–40 (Okla. 1992) (refusing to impose discipline for attorney's felonious conviction of driving under the influence, second offense, where bar failed to introduce any evidence linking the conviction to the attorney's unfitness to practice law).

In past cases, in this jurisdiction and elsewhere, where an attorney's illegal possession and/or use of a firearm was found to reflect adversely on his fitness to practice law, a sufficient nexus between the illegal conduct and the attorney's ability to function as a lawyer was present. *Barry*, 762 N.W.2d at 136, 138 (linking attorney's illegal use of confiscated firearms to his pattern of abuses while serving the public as

full-time county attorney); *see also In re Pleva,* 525 A.2d 1104, 1107–08 (N.J. 1987) (linking attorney's illegal possession of firearms to his dishonesty in filling out a certificate before purchasing the firearms); *State ex rel. Okla. Bar Ass'n v. Badger,* 912 P.2d 312, 314–15 (Okla. 1995) (linking attorney's illegal purchase and possession of firearms to his lack of judgment and reliance on "facially questionable advice"); *In re Disciplinary Proceedings Against Schuh,* 730 N.W.2d 152, 154 (Wis. 2007) (linking attorney's conviction for knowingly possessing a firearm in furtherance of a drug trafficking crime to "violations of his obligations as an attorney"). Some of these cases involved the use of a firearm during incidents of domestic abuse. *See, e.g., In re Runyon,* 491 N.E.2d 189, 190 (Ind. 1986) (linking attorney's three felony convictions for possessing unregistered firearms to his "heinous" acts of forcing his way into ex-wife's apartment, hitting her with a club, and holding her at gunpoint). Other cases involved displaying the weapon in a threatening manner or discharging it, thereby showing disrespect for the law, a lack of judgment, and placing the public at great risk. *See, e.g., People v. Hook,* 91 P.3d 1070, 1073–74 (Colo. 2004) (recognizing attorney's discharge of a firearm in a public place risked serious injury or death to two people); *People v. Senn,* 824 P.2d 822, 825 (Colo. 1992) (linking attorney's discharge of a firearm directly over his wife's head during an argument to a "critical failure of judgment" and "a contempt for the law which was at odds with [his] duty to uphold the law"); *In re Martin,* 888 So.2d 178, 181–82 (La. 2004) (linking attorney's felony conviction for having a stand-off with police and discharging his pistol in the air to the great risk of harm stemming from such crimes); *Disciplinary Counsel v. Howard,* 914 N.E.2d 377, 381 (Ohio 2009) (linking attorney's felony convictions resulting from a stand-off with the police and discharging

his firearm twice at an officer to the risk of harm posed to police officers, his neighbors, and himself from these crimes); *In re Ervin*, 694 S.E.2d 6, 9 (S.C. 2010) (linking attorney's conduct of presenting and pointing a firearm at another driver during a road rage incident to the exercise of "extremely poor judgment"). The common factor in all of these cases is that the attorney's possession and/or use of the firearm related in some way to his fitness to practice law.

The board has established that Keele was convicted of a felony for knowingly possessing a firearm while being an unlawful user of, or addicted to, a controlled substance. However, the board has not demonstrated how this conviction relates to Keele's fitness to practice law. Keele's illegal possession of a firearm has not affected the professional relationships he has with his clients, fellow lawyers, or judges. This criminal conduct has not called into question his ability to competently and vigorously represent clients in important controversies and guard confidential information. Keele legally gained possession of the firearm on behalf of a client prior to his struggles with addiction; therefore, the nexus linking his criminal conduct to his fitness to practice law is tenuous. *See The Law of Lawyering* § 65.4, at 65-9 ("[E]ven among serious crimes the degree of immorality involved may differ and so may implications about the offender's character and capacity to cause more harm in the future."). His legal receipt of the firearm for a client does not reflect poor judgment or disrespect for the law.

In considering the factors we announced in *Templeton*, we note Keele's illegal possession of the firearm is an isolated incident and does not demonstrate a pattern of criminal conduct or disrespect for the law. *Cf. Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Marcucci*, 543

N.W.2d 879, 882–83 (Iowa 1996) (disciplining attorney for pattern of criminal conduct resulting in felony conviction for OWI, third offense). He did not display or threaten any person with the weapon, fire the weapon, use the weapon during an act of domestic violence, or otherwise victimize any person with the weapon. While we agree with the board that a drug addict's possession of a firearm poses a serious threat of injury to potential victims, we also agree with the federal district court's conclusion that Keele's possession of the firearm was innocuous and posed no real risk of actual or potential injury to a victim. This conclusion is supported by the facts that the firearm was unloaded, discovered in an empty upstairs closet, packed away in a cloth case, and no ammunition was found in the house. Finally, Keele's mental state did not cause him to obtain the firearm. He legally took possession of the firearm for the benefit of a client prior to becoming depressed or using crack cocaine.

Thus, the board has failed to establish by a convincing preponderance of the evidence that a sufficient nexus exists between Keele's illegal possession of the firearm and his ability to function as a lawyer. Accordingly, while we do not condone or excuse Keele's conduct, we find Keele's illegal possession of the firearm does not adversely reflect on his fitness to practice law in violation of rule 32:8.4(b).

**IV. Conclusion and Disposition.**

We have previously found Keele's unlawful use of, or addiction to, a controlled substance violated the Iowa Rules of Professional Conduct and warranted discipline in the form of a public reprimand. Therefore, in considering the present complaint, we only consider Keele's conduct in illegally possessing a weapon for purposes of determining whether Keele has committed a new violation of the Iowa Rules of Professional Conduct.

Because we find the board has failed to establish by a convincing preponderance of the evidence that Keele's illegal possession of a weapon violates rule 32:8.4(b), we dismiss the board's complaint.

**COMPLAINT DISMISSED.**

All justices concur except Waterman, Mansfield, and Zager, JJ., who take no part.