# IN THE SUPREME COURT OF IOWA

No. 12–0844

Filed October 19, 2012

**IOWA SUPREME COURT
ATTORNEY DISCIPLINARY BOARD,**

    Complainant,

vs.

**PETER SEAN CANNON,**

    Respondent.

_____

On review of the report of the Grievance Commission of the Supreme Court of Iowa.

The Grievance Commission of the Supreme Court of Iowa recommends that attorney be publicly reprimanded. **LICENSE SUSPENDED.**

Charles L. Harrington and David J. Grace, Des Moines, for complainant.

David L. Brown and Jay D. Grimes of Hansen, McClintock & Riley, Des Moines, for appellee.

**ZAGER, Justice**.

The complainant, the Iowa Supreme Court Attorney Disciplinary Board (Board), alleges the respondent, Peter Sean Cannon, violated Iowa Rule of Professional Conduct 32:8.4(b). The alleged violation was based on three separate criminal convictions occurring in 2009 and 2010. The Grievance Commission of the Supreme Court of Iowa (commission) found Cannon's convictions constituted a violation of rule 32:8.4(b) and recommended we publicly reprimand Cannon. Upon our de novo review, we find Cannon violated rule 32:8.4(b) and suspend his license to practice law for thirty days.

## I. Background Facts and Proceedings.

Cannon was admitted to the Iowa bar in 1983. He practiced at the law firm of Connolly, O'Malley, Lillis, Hansen & Olson from 1983 until 1998, when he became a sole practitioner. He has practiced as a sole practitioner in Iowa since 1998.

The Board filed a three-count complaint against Cannon on June 24, 2011. Count I alleged that on July 13, 2009, Cannon was convicted of the crime of operating a boat while intoxicated, first offense, in violation of Iowa Code section 462A.14 (2009). Count II alleged that on October 8, 2009, Cannon was convicted of possession of cocaine, a controlled substance, in violation of Iowa Code section 124.401(5). Finally, Count III alleged that on November 17, 2010, Cannon was convicted of operating a motor vehicle while intoxicated (OWI), first offense, in violation of Iowa Code section 321J.2.[1] With regard to these convictions, the Board invoked issue preclusion under Iowa Court Rule

---

[1]Cannon had previously been convicted of OWI, first offense, in 2007. The State agreed to reduce the charge at issue here to another OWI, first offense, in exchange for a guilty plea.

35.7(3).[2] The Board contends these offenses violate Iowa Rule of Professional Conduct 32:8.4(b). The commission held a hearing on December 15, 2011. On May 11, 2012, the commission issued its findings of fact and conclusions of law and recommended we publicly reprimand Cannon for the pattern of criminal conduct demonstrated by the three convictions.

## II. Standard and Scope of Review.

We have described our standard of review in attorney disciplinary proceedings as follows:

> Attorney disciplinary proceedings are reviewed de novo. The Board bears the burden of proving misconduct by a convincing preponderance of the evidence, which is a lesser burden than proof beyond a reasonable doubt but a greater burden than is imposed in the usual civil case. If we determine the Board has met its burden and proven misconduct, "we may impose a greater or lesser sanction than the sanction recommended by the commission."

*Iowa Supreme Ct. Att'y Disciplinary Bd. v. Weaver*, 812 N.W.2d 4, 9 (Iowa 2012) (citations omitted); *see also Iowa Supreme Ct. Att'y Disciplinary Bd. v. Templeton*, 784 N.W.2d 761, 764 (Iowa 2010). When the Board alleges that a criminal conviction violates rule 32:8.4(b), the Board bears the additional burden of showing a sufficient nexus between the criminal conduct and the respondent's ability to function as an attorney. *See Iowa Supreme Ct. Att'y Disciplinary Bd. v. Keele*, 795 N.W.2d 507, 515 (Iowa 2011). The Board must prove the nexus by a convincing preponderance of the evidence. *Id.*

---

[2]All citations to the Iowa Court Rules are to the 2012 version, effective February 20, 2012.

### III. Findings of Fact.

The facts in this case are not in dispute. The Board alleged that Cannon pled guilty to operating a boat while intoxicated, first offense; possession of cocaine; and OWI, first offense. In his answer to the Board's complaint, Cannon admitted each of these convictions. Moreover, the Board has supplied the court files from each conviction, which include Cannon's guilty pleas. The Board has proven each conviction by a convincing preponderance of the evidence.

### IV. Ethical Violations.

The Board alleged that each of Cannon's convictions constituted a violation of Iowa Rule of Professional Conduct 32:8.4(b). Rule 32:8.4(b) states, "It is professional misconduct for a lawyer to . . . commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness, or fitness as a lawyer in other respects." Iowa R. Prof'l Conduct 32:8.4(b). "[N]ot all criminal acts reflect on an attorney's fitness to practice law." *Weaver*, 812 N.W.2d at 12. Rather, we focus on the "link between the conduct and the actor's ability to function as a lawyer." *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Schmidt*, 796 N.W.2d 33, 40 (Iowa 2011) (citing 2 Geoffrey C. Hazard, Jr. et al., *The Law of Lawyering* § 65.4, at 65-8 (3d ed. Supp. 2009)). The crux of the question centers on whether Cannon's conduct demonstrates he has character defects that would detract from his ability to be trusted with "important controversies and confidential information." *See id.* (citation and internal quotation marks omitted).

As we noted in *Templeton*,

[I]llegal conduct *can* reflect adversely on fitness to practice law. A pattern of repeated offenses, even ones of minor significance when considered separately, *can* indicate indifference to legal obligation. The mere commission of a

criminal act does not necessarily reflect adversely on the fitness of an attorney to practice law. The nature and circumstances of the act are relevant to determine if the commission of the criminal act reflects adversely on the attorney's fitness to practice law.

*Templeton*, 784 N.W.2d at 767 (citations and internal quotation marks omitted).

With these considerations in mind, we have adopted the following test to determine whether a criminal act violates rule 32:8.4(b):

There must be some rational connection other than the criminality of the act between the conduct and the actor's fitness to practice law. Pertinent considerations include the lawyer's mental state; the extent to which the act demonstrates disrespect for the law or law enforcement; the presence or absence of a victim; the extent of actual or potential injury to a victim; and the presence or absence of a pattern of criminal conduct.

*Id.* (citation and internal quotation marks omitted); *see also Weaver*, 812 N.W.2d at 11.

The first factor we consider under *Templeton* is Cannon's mental state. *See Templeton*, 784 N.W.2d at 767. Cannon argues that his criminal acts were a result of depression and alcohol issues. He testified that these issues originated with a surgery he underwent in December of 2006. According to Cannon, approximately eighty percent of his small intestine was removed, making his absorption rate for alcohol much higher than it had been previously. This medical issue also led to bouts of depression. We note that while Cannon's substance abuse and mental state may have contributed to his actions, his depression and alcoholism do not excuse his mistakes. Moreover, Cannon presented no medical evidence as to how his depression affected his mind and decision making. *See Schmidt*, 796 N.W.2d at 41 (holding that attorney's depression did not excuse the choices he made, particularly when he did not present evidence that his mental condition clouded his mind).

We next examine the factor relating to the presence or absence of a victim. Many violations of rule 32:8.4(b) involve victims of criminal conduct. *See, e.g.*, *Schmidt*, 796 N.W.2d at 41 (attorney's severe physical attack on his wife in the presence of his children caused physical and psychological damage to his wife and psychological trauma to his children); *Templeton*, 784 N.W.2d at 770 (attorney's criminal acts of invasion of privacy had serious consequences for his victims). While Cannon's crimes did not result in any direct physical or psychological harm to a person, his OWI incident did result in property damage to the parking lot of a grocery store, thereby making the store a victim of his criminal action. We also consider potential injury to persons or property in determining whether a violation of rule 32:8.4(b) occurred. As we stated in *Weaver*, operating a motor vehicle while intoxicated "create[s] . . . grave risk of potential injury" to others. *See Weaver*, 812 N.W.2d at 11. As described below, each of Cannon's criminal convictions shows a reckless disregard for the public.

Cannon's boating-while-intoxicated conviction arose out of a stop by a water patrol officer with the Iowa Department of Natural Resources. The officer observed Cannon accelerating "rather quickly" in the five mile per hour speed-limit zone at 10:30 p.m. on Friday, July 11, 2008. The officer noted Cannon had slurred speech, slow reaction times, and smelled of alcohol. A subsequent breath test revealed Cannon's blood alcohol content was .186. By driving a boat at night while intoxicated, Cannon could have seriously injured other people on the water, himself, or the passenger on his boat.

Cannon's conviction for possession of cocaine also arose out of an incident involving alcohol. Responding to a report of a possible intoxicated driver, police found a vehicle stopped in the middle of a

roadway. Cannon was observed walking away from the stopped vehicle. A woman in the driver's seat and Cannon both appeared to be intoxicated. Cannon was arrested for public intoxication, and during a search conducted incident to that arrest, an officer found a baggy containing about one gram of cocaine in his suit coat pocket. Cannon denies he ever used cocaine, and the police officer reported that the woman he was with appeared to have cocaine on her upper lip. Though Cannon had not been driving during that incident, he knew his companion had been drinking, and he had reason to believe she was also using cocaine. The incident took place in a residential neighborhood in the early morning hours and could have resulted in serious or even fatal injury to other drivers or pedestrians.

Finally, Cannon was arrested for OWI after his car struck a barrier in a grocery store parking lot. When a police officer approached the car, Cannon and a female acquaintance were standing near it. Cannon appeared to be under the influence of alcohol. When questioned, Cannon denied he had been driving the car, even though he was holding the keys to the car. Cannon would not say who had been driving. He refused a breath test and was placed under arrest. Cannon later entered an *Alford* plea to OWI, first offense.[3] Driving while intoxicated through a

---

[3]We have recently described an *Alford* plea as follows:

> An *Alford* plea is a guilty plea entered pursuant to *North Carolina v. Alford*, 400 U.S. 25, 38, 91 S. Ct. 160, 168, 27 L. Ed. 2d 162, 171–72 (1970). "An *Alford* plea is a variation of a guilty plea. In effect, the pleas are the same as the defendant is agreeing to the imposition of a criminal sentence for the crime charged." The plea only differs from the traditional guilty plea "in that when a defendant enters an *Alford* plea, he or she does not admit participation in the acts constituting the crime."

*Emp'rs Mut. Cas. Co. v. Van Haaften*, 815 N.W.2d 17, 20 n.1 (Iowa 2012) (citations omitted).

grocery store parking lot could have caused serious injuries to pedestrians, other drivers, or passengers in other vehicles. Based upon the incidents described above, there was significant potential for injury to a multitude of people and damage to property.

Another factor we consider in determining whether an attorney has violated rule 32:8.4(b) is the presence of a pattern of criminal conduct. *Weaver*, 812 N.W.2d at 10–11 (citing *Templeton*, 784 N.W.2d at 767). Patterns of criminal conduct have sometimes involved repeated convictions for the same crime. *E.g., id.* at 11 (finding a pattern of criminal conduct existed when the attorney had been convicted of three OWIs); *Templeton*, 784 N.W.2d at 767–68 (finding a pattern of criminal conduct was shown by an attorney convicted of six counts of invasion of privacy). Here, even though Cannon has a variety of convictions, they all involve substance abuse and the possession of illegal substances.

Cannon was also convicted of OWI, first offense, in September 2007, for which he received a private admonition. Even though the 2007 OWI conviction is not at issue in this proceeding, a prior conviction is relevant to determining whether an attorney has displayed a pattern of criminal conduct. *See Weaver*, 812 N.W.2d at 11 (taking into account the attorney's prior OWI convictions and determining there was a pattern of criminal conduct). Based on these criminal convictions spanning a relatively short period of time, a clear pattern of criminal conduct is demonstrated.

Identifying this pattern of criminal conduct is also important to the analysis of the final *Templeton* factor—whether Cannon demonstrated a disrespect for the law and law enforcement. We have previously held that repeated "convictions for the same offense . . . indicate a pattern of criminal conduct and demonstrate a disregard for laws." *Id.*; *see also*

*Iowa Supreme Ct. Att'y Disciplinary Bd. v. Axt*, 791 N.W.2d 98, 101–02 (Iowa 2010) (noting attorney's second conviction for domestic abuse and repeated violations of a court order banning contact with the victim demonstrated disrespect for the law); *cf. Keele*, 795 N.W.2d at 514 (holding that an isolated incident did not indicate disrespect for the law). Cannon's repeated convictions for substance abuse-related offenses demonstrate disrespect for the law and law enforcement. In addition, police reports in two of Cannon's convictions indicate that he refused to cooperate with the officers during their initial investigations, further suggesting disrespect for law enforcement. *See Schmidt*, 796 N.W.2d at 41 (finding disrespect for law enforcement when an attorney prevented his victim from calling 911, lied to a neighbor in order to prevent the neighbor from calling 911, then broke the steel cage in the police car in order to use the police officer's cell phone without permission).

One factor weighs against finding a violation of rule 32:8.4(b). There was no actual physical or economic harm to clients as a result of Cannon's crimes. However, the factors weighing in favor of finding a violation outweigh this factor: his substance abuse and mental health issues; his repeated convictions for the same type of criminal conduct; his repeated disrespect for our laws and law enforcement; and finally, the very real risk that his repeated, irresponsible conduct could have caused significant harm to people and property. All these factors weigh in favor of finding a violation. After reviewing the *Templeton* factors, we conclude the Board proved by a convincing preponderance of the evidence that a sufficient nexus exists between Cannon's criminal acts and his fitness to practice law. *See Templeton*, 784 N.W.2d at 767. Accordingly, we find that Cannon has violated rule 32:8.4(b). We must now determine an appropriate sanction.

**V. Sanctions.**

There is no standard sanction warranted by any particular type of misconduct. *Weaver*, 812 N.W.2d at 13. Though prior cases can be instructive, the sanction warranted in a particular case must be based on the circumstances of that case. *Id.*

> In determining the appropriate discipline, we consider the nature of the alleged violations, the need for deterrence, protection of the public, maintenance of the reputation of the bar as a whole, and the respondent's fitness to continue in the practice of law, as well as any aggravating and mitigating circumstances. The form and extent of the sanctions must be tailored to the specific facts and circumstances of each individual case. Significant distinguishing factors in the imposition of punishment center on the existence of multiple instances of neglect, past disciplinary problems, and other companion violations.

*Id.* (citation and internal quotation marks omitted).

"With regard to convictions [for] criminal offenses, an attorney's license to practice law may be revoked or suspended depending on the severity of the offense and any aggravating or mitigating factors." *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Carpenter*, 781 N.W.2d 263, 270 (Iowa 2010). We have previously found that an attorney's conviction for second-offense drunk driving reflected adversely on the attorney's fitness to practice law. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Weaver*, 750 N.W.2d 71, 79 (Iowa 2008). As in *Weaver*, Cannon has been convicted of two OWI offenses, one involving boating and one involving an automobile. This conduct involves his character and reflects on his fitness to practice law. It also lessens public confidence in the legal profession. We found in *Weaver* that an attorney's violation of the criminal laws involving drunk driving was sufficient, standing alone, to warrant a short suspension. *Id.* at 91.

We have also had the opportunity to review an attorney's fitness to practice law as a result of drug-related criminal convictions. We have held that under our code of professional responsibility, attorneys have special responsibilities to refrain from drug possession and possession of drug paraphernalia. *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Sloan*, 692 N.W.2d 831, 832–33 (Iowa 2005). In *Sloan*, a three-month suspension was an appropriate sanction for an attorney's conduct which resulted in convictions for serious misdemeanor possession of crack cocaine and simple misdemeanor possession of drug paraphernalia. *Id.*; *see also Comm. on Prof'l Ethics & Conduct v. Shuminsky*, 359 N.W.2d 442, 445–46 (Iowa 1984) (two misdemeanor convictions for drug possession resulted in a suspension of not less than three months). After concluding that such conduct reflected on an attorney's fitness to practice law, we also concluded that a suspension was necessary to deter others from similar conduct and assure the public that courts will uphold the ethics of the legal profession. *Sloan*, 692 N.W.2d at 833; *Shuminsky*, 359 N.W.2d at 445. Here, Cannon has likewise been convicted of possession of cocaine which, along with his other convictions, would warrant a suspension of his license to practice law.

We next turn to any aggravating or mitigating circumstances in determining an appropriate sanction. In considering sanctions, mental and physical conditions may be mitigating factors. "The full extent of mitigation depends on the relationship between the unethical conduct and the mental and physical illnesses." *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Kress*, 747 N.W.2d 530, 541 (Iowa 2008). "Depression and alcoholism can be mitigating factors if they contributed to an attorney's misconduct." *Weaver*, 812 N.W.2d at 13. However, we have also noted that alcoholism and depression do not constitute " 'legal

justification, excuse, or defense' " for an attorney's misconduct. *Id.* at 11 (quoting *Schmidt*, 796 N.W.2d at 41).

Cannon claims that his physical and mental conditions, including alcoholism and depression, were factors in his criminal conduct. According to Cannon, he became depressed and started drinking more after major abdominal surgery in 2006. His problematic use of alcohol continued unabated for a number of years, ultimately resulting in his arrests and subsequent criminal convictions. The record, however, is devoid of any evidence beyond Cannon's own testimony to support his claim that his medical problems were the reason for his alcohol abuse.

Regardless of the cause of his alcoholism and depression, both were undoubtedly factors in Cannon's criminal conduct. In *Weaver*, we considered Weaver's *untreated* depression and alcoholism as *aggravating* factors. *Id.* at 13–14. Weaver had at least a ten-year history of alcoholism and depression that reflected adversely on his ability to practice law. *Id.* at 7–8. Additionally, Weaver had a history of noncompliance with treatment. *Id.* at 14 (quoting a letter from an intensive drug court officer with the Seventh Judicial District that stated, among other things, that Weaver was "intent on doing things his own way"); *see also Weaver*, 750 N.W.2d at 76–77 (detailing Weaver's resistance to an OWI sentence which included treatment at an alcohol treatment correctional facility).

In contrast, Cannon has sought and complied with treatment. Through addiction counseling spanning the course of two years, he has been able to recognize the genesis of his problem and has received treatment for both substance abuse and depression. He has received additional assistance from Alcoholics Anonymous, a lawyer's assistance program, and a holistic Catholic-based substance abuse program called

St. Gregory's Retreat. He has further committed to continuing treatment and staying sober.

Cannon has provided evidence of compliance with treatment for both his alcoholism and depression, and he has apparently been abstinent from alcohol since November 2009. His depression and alcoholism have not led to further violations of our criminal code or other ethical complaints. Cannon has now accepted responsibility for his actions and taken steps to remedy his behavior. We consider accepting responsibility and demonstrating remorse to be mitigating factors. *Templeton*, 784 N.W.2d at 770–71. Cannon also fully cooperated with the Board in its investigation of these disciplinary proceedings, which we also deem to be a mitigating factor. *Axt*, 791 N.W.2d at 103.

However, there are also significant aggravating factors which we must consider in fashioning an appropriate sanction. Cannon has been the subject of several prior disciplinary actions, including three public reprimands and a private admonishment between 1998 and 2010. In 1998, he received a public reprimand for, among other things, violating the terms of a court order and attempting to interfere with the disciplinary process. In 2002, Cannon received a second public reprimand for violating our advertising rules, for neglecting a client matter, and for failing to respond to the Board's inquiries. In 2008, Cannon received a private admonishment for his September 2007 OWI conviction, first offense.

Finally, on October 15, 2010, we issued another public reprimand to Cannon, this time for a violation of Iowa Rule of Professional Conduct 32:8.4(c). We found Cannon had engaged in misrepresentation when he submitted a plagiarized brief to a bankruptcy court. *See Iowa Supreme Ct. Att'y Disciplinary Bd. v. Cannon*, 789 N.W.2d 756, 759 (Iowa 2010).

We do not discipline an attorney twice for the same conduct, so Cannon's previous violations of our ethical rules will not result in cumulative sanctions for those violations. *See Keele*, 795 N.W.2d at 512–13. Nevertheless, we do consider previous disciplinary action as an aggravating factor in determining sanctions. *Axt*, 791 N.W.2d at 103. Further, we have determined that while private admonishments are not discipline, they do put an attorney on notice of ethical requirements. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Van Ginkel*, 809 N.W.2d 96, 110 (Iowa 2012). As such, a private admonishment is also an aggravating factor. *Id.*

Additionally, we have found that a pattern of repeated offenses warranted increased sanctions. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Johnson*, 792 N.W.2d 674, 683 (Iowa 2010) (finding that an attorney's established pattern of neglecting client matters, among other ethical infractions, warranted severe sanctions); *see also Templeton*, 784 N.W.2d at 771 (attorney received a three-month suspension after being convicted of six counts of invasion of privacy). Cannon's four criminal convictions in a relatively short period of time establishes a clear pattern of repeated offenses warranting an increased sanction.

We also consider experience to be an aggravating factor. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Howe*, 706 N.W.2d 360, 381 (Iowa 2005). Cannon has practiced law in Iowa since 1983. As an experienced attorney, he "should have known better." *See id.*

The commission recommended that we publicly reprimand Cannon for his ethical violation. We respectfully disagree. The nature of the criminal acts, involving operating vehicles while intoxicated and possession of drugs, are serious violations of our laws. Additionally, these are not isolated instances of criminal conduct. Rather, there was a

pattern of criminal conduct by Cannon involving alcohol and drugs. His interactions with law enforcement also show a disrespect for our laws and law enforcement. Such conduct undermines the reputation of the bar as a whole and reflects negatively on Cannon's fitness to practice law. Considering all of the aggravating and mitigating factors, Cannon's violation of our ethical rule warrants more than a public reprimand. We conclude that the appropriate sanction in this case is a suspension of Cannon's license to practice law for thirty days.

## VI. Disposition.

For the above reasons, we suspend the license of Peter Sean Cannon to practice law in this state for thirty days. The suspension applies to all facets of the practice of law. Iowa Ct. R. 35.13(3). Cannon must comply with the notification requirements of rule 35.23, and costs are taxed against him pursuant to rule 35.27(1). Unless the Board objects, Cannon's license will be automatically reinstated on the day after the thirty-day suspension period expires if all costs have been paid. Iowa Ct. R. 35.13(2).

**LICENSE SUSPENDED.**